408 S.E.2d 72

**Denzil R. YOST, Plaintiff Below, Appellant,**

v.

**Frank FUSCALDO, d/b/a Frank's Tire and Supply Company; R.L. Taylor Machinery, Inc., a Corporation; Farrel Company; Emhart Machinery Group, a Corporation; and Curtis Richardson, d/b/a Richardson's Services, Defendants Below, Appellees.**

**No. 19908.**

Supreme Court of Appeals of West Virginia.

Submitted May 14, 1991.

Decided July 18, 1991.

Rehearing Denied Sept. 5, 1991.

Robert F. Cohen, Jr., Richard Paul Cohen, Cohen, Abate & Cohen, Fairmont, and Allan N. Karlin, Morgantown, for appellant.

Frank Fuscaldo, pro se.

Charles G. Johnson, Allen, Johnson & Simmerman, Clarksburg, for appellees, Farrel Co. and Emhart Mach. Group.

Elisabeth H. Rose, Rose, Padden & Petty, Fairmont, for appellee, Curtis Richardson, d/b/a Richardson's Services.

BROTHERTON, Justice.

This is an appeal by Denzil Yost, the appellant, from the final order of the Circuit Court of Marion County dated July 18, 1990. Yost was awarded approximately $1.5 million by a Marion County jury against Frank Fuscaldo, one of the defendants. However, during trial, the court directed a verdict in favor of Curtis Richardson, d/b/a Richardson's Services, another defendant. On appeal, the appellant contends that the circuit court erred in dismissing Richardson from the case.

Denzil Yost's hand was amputated on February 4, 1985, while operating a rubber mill machine for Frank's Tire and Supply Company. Frank's Tire and Supply Company is owned by Frank Fuscaldo, a defendant in this case. At the time the accident occurred, Fuscaldo's workers' compensation coverage had lapsed because he had failed to pay premiums to the West Virginia Workers' Compensation Fund. Because Fuscaldo's statutory immunity from civil suit had lapsed, Yost filed suit against Fuscaldo.[1]

---

1. West Virginia Code § 23–2–5 (1985). Mr. Fuscaldo argues, on appeal, that his workers' compensation coverage did not lapse and that there was substantial confusion surrounding that issue at trial. While we agree that there was substantial confusion regarding the workers' compensation issue, we note that Mr. Fuscaldo did not appeal that decision. Therefore, it is not properly before this Court, and we do not address it.

After discovery, Yost added three additional parties as defendants, R.L. Taylor Machinery, Inc., the seller of the machine, Curtis Richardson, the mechanical engineer who reassembled and installed the machine, and Farrel Company, the manufacturer of the machine.[2]

On August 15–17, 1988, a separate trial was held on the issue of the validity of certain releases signed by Yost on behalf of the defendants below.[3] On August 17, 1988, the jury determined that the releases were invalid due to fraud in the inducement and execution of the releases because the plaintiff lacked the capacity to understand them. The appellant argued that he should be reimbursed for the attorney fees evolving out of that separate trial. However, on March 20, 1989, the court denied the plaintiff's motion for attorney fees, expert witness fees, and other expenses resulting from the separate trial on the issue of the validity of the releases.

Prior to the primary trial, Curtis Richardson filed two motions for summary judgment. The court denied both motions, but noted that it would give serious consideration to a motion for a directed verdict at the end of the plaintiff's case. Later in the trial, the court granted Richardson a directed verdict on the issue of negligence, stating that he was not a manufacturer, seller, or distributor of the rubber mill in question. The court also granted summary judgment to Richardson on the plaintiff's strict liability in tort theory.

At trial, Yost theorized that the injury occurred for two reasons. First, there was no adequate cooling system on the rubber mill machine, which caused the rubber to become overly hot, dragging the plaintiff's hand into the machine. Secondly, Yost theorized that the safety bar on the machine was improperly located because it required an affirmative act on the part of the operator to activate the emergency braking system. He contends that if the safety bar had been placed lower, the amputation would not have occurred. Thus, Yost argues that Richardson was negligent in not assembling the machine with a passive braking system and safety bar. Yost presented expert testimony that Richardson owed a duty of care, as the installer of the system, to place the safety bar in the lower, passive position. Richardson's expert testified that Richardson had done a proper job of mechanically installing the machine and that the safety bar complied with the standards set by the Occupational Safety and Health Administration (OSHA). However, testimony was also elicited that the American National Standards Institute (ANSI) standards expressed a preference for the passive braking system, such as a belly bar.

On June 21, 1990, the jury returned a verdict of $1,544,730.95 against the defendant, Fuscaldo. A jury verdict form revealed that the jury had apportioned Fuscaldo with 90% of the responsibility, Yost with 2% of the responsibility, and other parties with 8% of the responsibility. Fuscaldo filed a motion to set aside the verdict, and the plaintiff filed a motion for a new trial against Richardson. By final order dated July 18, 1990, the court denied both motions. This proceeding is the plaintiff's appeal from that final ruling.

2. Farrel Company was granted summary judgment by the court because the plaintiff could not supply evidence that Farrel was actually the manufacturer of that machine. Farrel produced evidence at trial that they did not manufacture that machine. Yost does not appeal this ruling.

   Taylor Machinery, Inc. is no longer in business and the corporation is dissolved.

3. The separate trial on the issue of the validity of the releases involves a rather strange set of circumstances. The appellant contends that Fuscaldo hired a third party to go directly to the plaintiff, bypassing his attorneys, and sought to settle the case directly with Yost. Yost signed four separate releases of his claim in exchange for a sum of money approximating $25,000.00. At trial, the four releases were raised as a defense by Fuscaldo, Richardson, and the Farrel Company. The plaintiff claimed that the releases were fraudulent and invalid. Psychiatrists testified that Yost did not understand the legality of what he was doing. A jury determined that the releases were invalid because of fraud in the inducement and execution of the releases. They concluded that the plaintiff lacked the capacity to understand the releases, and thus, they were not considered releases for the primary trial.

On appeal, the appellant argues that the circuit court erred in granting Richardson a directed verdict on the issue of negligence and in granting summary judgment on the plaintiff's strict liability theory. The appellant also contends that he is entitled to reimbursement for the attorney fees he incurred during the separate trial on the releases.

First, we address the issue of the directed verdict. Rule 50(a) of the West Virginia Rules of Civil Procedure provides the mechanics of a directed verdict motion:

> A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict which is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

The question of when the motion is granted has been discussed by this Court in numerous cases. "Questions of negligence, due care, proximate cause and concurrent negligence present issues of fact for jury determination when the evidence pertaining to such issues is conflicting or where the facts, even though undisputed, are such that reasonable men may draw different conclusions from them." Syl. pt. 5, *Hatten v. Mason Realty Co.*, 148 W.Va. 380, 135 S.E.2d 236 (1964).

■ A motion for a directed verdict is generally granted when the plaintiff's evidence, considered in the light most favorable to him, fails to establish a prima facie right to recover. *Powell v. Time Insurance Co.*, 181 W.Va. 289, 382 S.E.2d 342

(1989). In *Adkins v. City of Hinton*, 149 W.Va. 613, 142 S.E.2d 889 (1965), the Court stated that a motion for a directed verdict will be granted where the evidence presented by the defendant is so clearly insufficient as to support a verdict for him that such verdict, if returned by the jury, would be set aside. Of course, every reasonable and legitimate inference fairly arising from the testimony in its entirety must be resolved in the favor of the party against whom the verdict is asked to be directed. *Jividen v. Legg*, 161 W.Va. 769, 245 S.E.2d 835 (1978). Therefore, Yost must present a prima facie right to recover against Richardson in order to avoid a directed verdict.

■ In the case now before us, it is uncontradicted that Richardson, an independent contractor, reassembled the machine from disassembled parts. The issue of the liability of an independent contractor is discussed in the *Restatement (Second) of Torts* (1965). Section 404 of the *Restatement* states that "[o]ne who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels." [4] Although the *Restatement* aligns the duty of care owed by an independent contractor with that of a manufacturer, an assembler of a product is, by his very nature, different from a manufacturer. Because of the manufacturer's position in designing the product to include safety devices, his duty of reasonable care requires him to recognize an unreasonable risk of harm to those who use the products as designed. Since an assembler depends upon the manufacturer to properly design the product he assembles, his standard of reasonable care is less onerous. Thus, the assembler's duty of reasonable care is to recognize an unreasonable risk of harm to those who use the product as assembled, unless, as we discuss below, the assembler

---

**4.** Section 395 of the *Restatement* deals with the duty of a manufacturer:

> A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.

has or alleges he has a special skill allowing him to modify the product.

■ Richardson's action in placing the brake above instead of lower as a "belly bar" must be measured by the negligence standards set forth in Section 299 of the *Restatement.* A negligent act is defined by the *Restatement* as one which "is done without the competence which a reasonable man in the position of the actor would recognize as necessary to prevent it from creating an unreasonable risk of harm to another." *Id.* at § 299. Section 299A of the *Restatement* also points out that "[u]nless he represents that he has greater or less skill or knowledge, one who undertakes to render services in the practice of a profession or trade is required to exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities." [5]

While we acknowledge that Richardson is a mechanical engineer, it was not proved to this Court's satisfaction that Richardson possessed a special competence in the modification of rubber mills to change its design and enhance safety, or that he represented that he possessed that special competence. This Court does not doubt that, in all likelihood, there are many mechanical engineers in West Virginia who have no special competence in the design and modification of rubber mills. In this case, the placement of the safety bar met OSHA standards. The ANSI standard of a "belly bar" is a preference rather than a requirement. Evidence was presented that the bar was placed where the manufacturer had intended, based upon holes in the mill frame matching the diameter of the safety bar. No evidence was introduced to show Richardson knew of the problem of poor cooling and sticky rubber at the time the machine was assembled. Thus, we cannot say that a reasonable man in the same position as Richardson would recognize that the placing of the brake above instead of lower as

a "belly bar" would result in an unreasonable risk of harm to the operator.

Although West Virginia has no case law directly addressing the duty of care owed by an assembler of a product, we note that other jurisdictions have made similar findings. In *Campbell v. Otis Elevator Co.,* 808 F.2d 429 (5th Cir.1987), the plaintiff sued Otis Elevator, the installer of the elevator, for negligence in failing to repair, warn against, and inspect for alleged defects in the elevator. The court of appeals held that the repairer of the elevator was only held to a duty of reasonable care.

■ Like the Fifth Circuit, we are not persuaded by the evidence presented below. Unless this Court is persuaded that an independent contractor who assembles a product has a specialized skill or competence, or has represented that he has such a skill, to modify the product to enhance its safety, the independent contractor is held to the duty of reasonable care to recognize a risk of unreasonable harm to those who use the product as assembled. Since we find that Richardson's actions in reassembling the machine were not negligent and met the standard of care, Yost did not have a prima facie right to recover against Richardson. Therefore, the directed verdict issued by the Circuit Court of Marion County is affirmed.

As a secondary argument, the plaintiff asks that we impose our strict liability in tort principle for defective products to this case. In *Morningstar v. Black & Decker Manufacturing Co.,* 162 W.Va. 857, 253 S.E.2d 666 (1979), this Court stated that:

> the general test for establishing strict liability in tort is whether the involved product is defective in the sense that it is not reasonably safe for its intended use. The standard of reasonable safeness is determined not by the particular manufacturer, but by what a reasonably prudent manufacturer's standard should have been at the time the product was made.

**5.** Comment (f) to Section 299 notes that "[i]f the actor possesses special competence, he must exercise it, not only in his profession, trade, or occupation, but also whenever a reasonable man in his position would realize that its exercise is necessary to the reasonable safety of others."

*Id.* 162 W.Va. at 888, 253 S.E.2d at 683. *See also Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1963). More recently, in *Hill v. Ryerson,* 165 W.Va. 22, 268 S.E.2d 296 (1980), this Court explained that when strict liability was involved, "[h]istorically the doctrine's underlying premise is that one engaged in the business of selling a product impliedly represents that goods which it places in the stream of commerce are free of defects, that is, they are reasonably suitable, safe and fit for the purposes for which those goods have been sold." *Id.* 165 W.Va. at 32–33, 268 S.E.2d at 304 (citations omitted).

We also cited *Michalko v. Cooke Color & Chemical Corp.,* 91 N.J. 386, 451 A.2d 179 (1982), where strict liability was imposed on a contractor who had reconstructed a hydraulic press according to the owners' specifications. In so doing, all of the safety devices were left off the press and it was clear that the contractor was aware that this created a dangerous situation.

■ In the present case, the reassembly of the rubber mill was accomplished by merely putting it back together after it had been disassembled at the place where it had been purchased. The safety devices were installed. The plaintiff's complaint is that there should have been a better safety device installed. We decline to apply strict liability to an assembler unless it can be shown that the condition complained about was so obvious and egregious that no reasonably competent assembler would have left the product in that condition.

■ Moreover, strict liability has only been applied to a manufacturer, seller, or distributor of the product in question. *Star Furniture v. Pulaski Furniture Company,* 171 W.Va. 79, 297 S.E.2d 854, 860–61 (1982). Since Richardson did not make, sell, or distribute the mill, he does not fall into the categories which permit the application of strict liability. Thus, we refuse to extend the theory of strict liability in tort to include an independent contractor who does not have a specialized skill or competence, or represent that he has such a skill, to modify a product to enhance its safety.

■ "A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Casualty & Surety Co. v. Federal Insurance Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Since there is no genuine issue of fact concerning the applicability of strict liability in tort in this case, the court correctly granted summary judgment.

The final issue before this Court is whether the appellant is entitled to reimbursement of attorney fees which were incurred in prosecuting the separate issue of whether the releases obtained by Fuscaldo on the behalf of the defendants below from Yost were valid releases for the purpose of the primary suit. All three defendants attempted to present these releases as a defense at the primary trial. At trial, psychiatric reports were presented which indicated that Yost, while lacking understanding of the legal nature of the transaction, did understand that if he received $25,000.00, he would not go to court. However, the jury found the releases fraudulently obtained and ruled them invalid.

■ Generally, attorney fees and costs are not recoverable by a party in the absence of a provision permitting that recovery in a statute or court rule. "As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority for reimbursement." Syl. pt. 2, *Sally–Mike Properties v. Yokum,* 179 W.Va. 48, 365 S.E.2d 246 (1986). However, "[a] well established exception to the general rule prohibiting the award of attorney fees in the absence of statutory authorization, allows the assessment of fees against a losing party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Nelson v. Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86, 92 (1982) (citation omitted).

In the case now before us, the jury found that the defendants had acted fraudulently in obtaining the releases in question. Con-

sequently, we must determine whether a finding of fraud is considered an action in "bad faith, vexatiously, wantonly, or for oppressive reasons" sufficient to permit the award of attorney fees. *Id.* 171 W.Va. at 451, 300 S.E.2d at 92.

Unfortunately, actions done in "bad faith, vexatiously, wantonly or for oppressive reasons" are often difficult to define. We have recognized that "'bad faith' may be found in conduct leading to the litigation or in conduct in connection with the litigation." *Sally–Mike Properties,* 179 W.Va at 51, 365 S.E.2d at 249. However, "[b]ringing or defending an action to promote or protect one's economic or property interests does not *per se* constitute bad faith, vexatious, wanton or oppressive conduct within the meaning of the exceptional rule in equity authorizing an award to the prevailing litigant of his or her reasonable attorney's fees as 'costs' of the action." *Id.* at syl. pt. 4. Further, this Court distinguished between cases involving a good faith dispute and frivolous actions. "Everyone who has a good faith dispute requiring a decision by an impartial arbiter is entitled to his day in court. On the other hand, every person is not entitled to his day in court regardless of the frivolous nature of the suit. Parties whose interest in the legal process is to oppress or cheat others should be discouraged." *Nelson,* 171 W.Va. at 454, 300 S.E.2d at 95.

After considering the jury's finding of fraud, this Court can only conclude that the appellees' actions below were oppressive and wanton, and should be discouraged. Thus, we find that the appellant should be reimbursed by all of the defendants below for the attorney fees expended in litigating the separate trial on the issue of the validity of the releases.

Accordingly, the judgment of the Circuit Court of Marion County is affirmed in part and reversed in part.

Affirmed in part; reversed in part.