513 S.E.2d 161

Dr. Donald S. PRITT, Appellant,

v.

SUZUKI MOTOR CO., LTD., a Foreign Corporation; U.S. Suzuki Motor Corp., a California Corporation; Davis and Owens, Inc., dba Suzuki of Harrisville, a West Virginia Corporation; Specialty Vehicle Institute of America, a California Company, Appellees.

No. 24999.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 27, 1998.

Decided Dec. 15, 1998.

Rebecca A. Baitty, Esq., Sarasota, Florida, Joseph W. Moch, Esq., Teresa M. Hendricks, Esq., Grand Rapids, Michigan, Richard W. Cardot, Esq., Elkins, West Virginia, for Appellant.

Anita R. Casey, Esq., G.W. Lavender, III, Esq., Karyn M. Schmidt, Esq., Meyer, Darragh, Buckler, Bebenek & Eck, Charleston, West Virginia, Gene C. Schaerr, Esq., John Fee, Sidley & Austin, Washington D.C., for Suzuki.

Ira M. Haught, Esq., Harrisville, West Virginia, for Davis & Owens.

David L. Wyant, Esq., Shuman, Annand & Poe, Wheeling, West Virginia, for Specialty Vehicle Institute.

PER CURIAM:[1]

This Court accepted Appellant Donald S. Pritt's appeal solely on the issue of whether the Circuit Court of Randolph County erred in its ruling entered on July 21, 1995, through which the lower court awarded attorneys' fees and costs to the defendants in this case, as well as to Appellant's trial counsel. Having thoroughly reviewed this issue, we conclude that the lower court was correct in its ruling and accordingly, we affirm.

## I. Factual and Procedural Background

On December 9, 1990, Appellant was allegedly in an all-terrain vehicle ("ATV") accident. Because he was alone at the time, there were no witnesses to the alleged accident. On October 27, 1992, Appellant brought suit against Appellee Suzuki Motor

---

**1.** We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley,* 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

Company,[2] as the manufacturer of the ATV. Appellant averred that he suffered severe, permanent physical and mental injuries including a closed head injury and soft tissue injuries, as a result of the accident. Appellant, who was previously a successful podiatrist, now claimed to have an intelligence quotient of around sixty. Appellant alleged that he suffered back and neck injuries which rendered him disabled and forced him to walk in a stooped-over fashion with the assistance of a cane. As a result of these injuries plus continuing extreme pain in both his right leg and hand, Appellant claimed that he was no longer able to work.

When he failed to obtain a continuance of the July 14, 1994, trial date, Appellant voluntarily committed himself to St. Joseph's Hospital in Parkersburg the day before the trial was set to begin. The trial court appointed a guardian ad litem to represent Appellant's interests at trial. Just before trial, Appellees learned that Appellant had failed to disclose that he had been treated for psychological problems for years.[3] Based on this information, Appellees moved to strike Appellant's claim for mental damages. Concluding that Appellant had been acting in "bad faith" in making his discovery responses, the circuit court barred him from presenting any expert testimony on psychiatric injury or damages at trial.

The first witness called at trial was Appellant's son, ("Mr.Pritt"). During cross-examination, Mr. Pritt spoke at length about the limitations his father had suffered as a result of the accident. In an effort to impeach Mr.

Pritt, Appellees moved to introduce surveillance tapes taken during a six-week period which showed Appellant performing a variety of physical activities.[4] The lower court excused the jury and the videotape was viewed by counsel and the court. Based on the highly physical and demanding nature of the activities that the videotape captured Appellant executing, the trial court declared a mistrial.[5]

In its order declaring a mistrial,[6] the lower court found that "plaintiff, Donald S. Pritt, has willfully concealed his condition, and has willfully and intentionally and fraudulently represented to have been injured in various ways that might have entitled him to recover substantial recovery from the defendants and their insurance carriers seeking, obviously, a very substantial recovery possibly into the millions of dollars had this been a legitimate claim." In addition, the trial court observed that Appellant had been motivated by the possibility of recovering insurance proceeds as "he had, prior to the alleged accident, purchased various insurance policies that had disability indemnity provisions in them and that he has, in fact, been receiving substantial money from some of those insurance companies." Both Appellees' counsel and Appellant's trial counsel, Joseph Moch, filed motions for attorneys' fees.[7]

The lower court's Judgment Order[8] sets forth various findings including the fact that Appellant, as demonstrated by the videotapes, was a "very active individual performing a variety of physical tasks that also require mental alertness." In this order, the

2. Appellant also named as defendants, U.S. Suzuki Motor Corp., Davis and Owens, Inc., D/B/A Suzuki of Harrisville, and Speciality Vehicle Institute of America.

3. Suzuki had specifically inquired regarding Appellant's history of psychological treatment both at his deposition and by written interrogatory.

4. The videotapes show Appellant climbing into and out of boats; positioning a boat trailer at the bottom of a boat ramp; climbing up a grassy slope; walking quickly up and down a flight of steps within a short span of time; carrying bags of charcoal to a grill; removing and emptying a large metal ash container from the grill; throwing objects overhand; helping to carry a boat and a ladder; carrying a pump motor; attempt-

ing to start the boat motor with his right hand; and lying on a boat dock while reaching underneath to spray off the underside of the dock.

5. At this point, the individual appointed by the trial court as Appellant's guardian ad litem asked to be excused from the appointment.

6. The order was entered on September 27, 1994.

7. Appellees' counsel filed their motion seeking attorneys' fees on September 9, 1994, and Appellant's trial counsel filed his motion on September 19, 1994.

8. This order was combined with the order declaring a mistrial, entered on September 27, 1994.

trial court expressly found that Appellant was perpetrating a fraud on the court, the parties, their counsel, and his own counsel. On October 11, 1994, Appellant's newly-retained post-trial counsel filed a motion to set aside the court's judgment order. The circuit court held a hearing on Appellant's post-trial motion on November 17, 1994, and granted a continuance to permit the newly-retained counsel an opportunity to familiarize himself with the case. The lower court also heard evidence on various motions for attorneys' fees. The trial court considered Appellant's post-trial motion to set aside judgment on December 21, 1994, and again granted a continuance. At this same proceeding, the circuit court heard argument from both sides regarding the authenticity of the videotapes. On May 15, 1995, the trial court heard argument on Appellant's motion for a new trial and denied the same in an order dated July 21, 1995. In that same order, the lower court awarded attorneys' fees to both Suzuki and Appellant's trial counsel.[9]

On August 2, 1995, Appellant filed additional post-trial motions seeking a stay, to set aside judgment, and new trial. He then filed a petition for review with this Court on November 25, 1995. Shortly after granting review solely on the award of attorneys' fees on October 19, 1996, this Court vacated its grant of review on the grounds that Appellant's post-trial motions had not yet been ruled upon by the lower court. By order entered February 2, 1997, the circuit court ruled that Appellant's post-trial motions had not been timely filed and were in fact "phantom" in nature because they presented no new issues. Appellant filed a second petition for appeal with this Court on June 18, 1997, which this Court granted for the sole purpose of reviewing the award of attorneys' fees.

## II. Standard of Review

■■■ With regard to a review of the appropriateness of sanctions ordered by a trial court, the standard, as we recognized in *Bartles v. Hinkle*, 196 W.Va. 381, 472 S.E.2d 827 (1996), is abuse of discretion: "The question is not whether we would have imposed a more lenient penalty had we been the trial court, but whether the trial court abused its discretion in imposing the sanction." *Id.* at 389–90, 472 S.E.2d at 835–36. On the issue of whether the trial court properly directed Appellant to pay attorneys' fees to his own trial counsel, our review is de novo, as that issue involves a question of law. *See* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

## III. Discussion

■■■ Arguing that the lower court's dismissal of his lawsuit was an appropriately severe sanction, Appellant challenges the award of attorneys' fees to both Suzuki and Mr. Moch. We recently stated in syllabus point two of *Bartles:*

> In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the administration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case.

196 W.Va. at 384, 472 S.E.2d at 830. In this case, the wrongful conduct at issue was the fraud which Appellant perpetrated on the court in filing a baseless lawsuit and on his own counsel in securing representation for apparently nonexistent injuries.

■■■ This Court has long-recognized the inherent authority of trial courts to award attorney's fees as a sanction for fraud. In *Bowling v. Ansted Chrysler–Plymouth–Dodge, Inc.*, 188 W.Va. 468, 425 S.E.2d 144 (1992), we discussed the issue of attorney's fees in the context of an action for fraud: " 'A well-established exception to the general

---

9. Counsel for Suzuki was awarded $353,290.04 and Appellant's trial counsel was awarded $193,218.14. The trial court awarded prejudgment interest on the attorneys' fees award from the mistrial date of July 22, 1994.

rule prohibiting the award of attorney fees in the absence of statutory authorization, allows the assessment of fees against a losing party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 474, 425 S.E.2d at 150 (quoting *Nelson v. West Virginia Public Employees Ins. Bd.,* 171 W.Va. 445, 451, 300 S.E.2d 86, 92 (1982)). Based on our determination that "fraud falls within the 'bad faith' exception to the American rule[,]" we concluded in *Bowling* that findings of fraud demonstrated by clear and convincing evidence permit attorney's fees to be awarded against a defendant. 188 W.Va. at 475, 425 S.E.2d at 151; *accord Yost v. Fuscaldo,* 185 W.Va. 493, 499–500, 408 S.E.2d 72, 78–79 (1991) (reversing trial court's decision not to award attorney's fees against defendants who had fraudulently induced plaintiff to sign release settling his personal injury claim). The trial court's award of attorneys' fees in this case was based both on violations of specific rules of civil procedure, as well the court's inherent sanctioning power.[10]

 In its order awarding attorneys' fees, the trial court set forth detailed findings justifying its conclusion that sanctions were warranted.

> Based upon the appearance of the plaintiff in the tapes as described, together with the physical activities being performed by him as shown in the tapes, including, but not limited to, manipulating pieces of equipment, such as the pump which he carried, started with a pull rope with multiple efforts to start, substitution of another pump which he carried for some distance with no apparent difficulty, operating motor boats on the river, painting a line on the boat ramp beside his house, and various other physical activities shown on the tapes over a period of approximately six (6) weeks, justify and warrant, together with the other reasons stated by the Court

on the record in Elkins, dismissal of the action of the plaintiff in its entirety.

> . . . .

> Based upon all the evidence presented before this Court, it is clear that the plaintiff misrepresented, at the least, his physical and mental condition, and further that he actively concealed the truth of the same, all of which conduct amounts to fraud which warrants the imposition of the sanction of dismissal of the plaintiff's cause of action for the reasons and under the Rules [West Virginia Rules of Civil Procedure 11, 26, 37] and inherent power of the Court previously cited above and in the Court's other rulings.

> Further, based on the conduct of the plaintiff as aforesaid, the Court has a sufficient factual basis and authority under the Rules previously cited and the inherent power of the Court to rule in favor of the defendants in their respective petitions and motions for award of attorney fees and costs in and about the defense of this matter.

In support of its decision to award attorneys' fees and costs, the trial court cited the case of *Chambers v. NASCO, Inc.,* 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991), in which the United States Supreme Court ruled that:

> (a) Federal courts have the inherent power to manage their own proceedings and to control the conduct of those who appear before them. In invoking the inherent power to punish conduct which abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction, which may range from dismissal of a lawsuit to an assessment of attorney's fees. Although the "American Rule" prohibits the shifting of attorney's fees in most cases, an exception allows federal courts to exercise their inherent power to assess such fees as a sanction

---

**10.** In its orders, the lower court stated that its award was made under the authority of Rules 11, 26, and 35 of the West Virginia Rules of Civil Procedure. Rule 11 provides for sanctions against both parties and their counsel for the filing of frivolous, harassing, or baseless claims. Rules 26 and 37 each permit the use of sanctions, including an award of attorney's fees, when specific discovery provisions are determined to have been violated. In this case, the trial court found that Appellant had failed to disclose, in response to express discovery requests propounded by Appellees, information regarding his eight-year period of psychiatric treatment that preceded the accident.

**394**

when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, as when the party practices a fraud upon the court, or delays or disrupts the litigation or hampers a court order's enforcement.

501 U.S. at 33, 111 S.Ct. 2123 (citations omitted). Based on the series of actions undertaken by the plaintiff/petitioner in that case, which included fraudulent conduct aimed at depriving the district court of jurisdiction, the filing of false and frivolous pleadings, and other tactics of delay, oppression, harassment and massive expense, the Supreme Court upheld the lower court's award of the opposing party's entire amount of attorney's fees—approximately one million dollars. *Id.* at 34, 111 S.Ct. 2123 (rejecting contention that trial court's award of full amount of fees indicates failure to tailor sanction to particular wrong especially in view of frequency and severity of judicial system abuses and "the resulting need to ensure that such abuses were not repeated").

■ As additional authority for its award of attorneys' fees and costs, the trial court cited this Court's decision in *Daily Gazette Co. v. Canady*, 175 W.Va. 249, 332 S.E.2d 262 (1985), in which we identified the devastating effect that baseless lawsuits wreak on our judicial system:

Although there is an undeniable interest in the maintenance of unrestricted access to the judicial system, unfounded claims or defenses asserted for vexatious, wanton, or oppressive purposes place an unconscionable burden upon precious judicial resources already stretched to their limits in an increasingly litigious society. In reality, to the extent that these claims or defenses increase delay or divert attention from valid claims or defenses asserted in good faith, they serve to deny the very access to the judicial system they would claim as justification for their immunity from sanction.

*Id.* at 252, 332 S.E.2d at 265. Based on the recognized need to impose sanctions for frivolous suits and abuses of the judicial system, we held in *Canady* that

A court may order payment by an attorney to a prevailing party reasonable attorney fees and costs incurred as the result of his or her vexatious, wanton, or oppressive assertion of a claim or defense that cannot be supported by a good faith argument for the application, extension, modification, or reversal of existing law.

Syllabus, 175 W.Va. at 250, 332 S.E.2d at 263; *see also* Syl. Pt. 4, in part, *State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 626, 474 S.E.2d 554, 556 (1996) (holding that "circuit court has discretion [under Rule 11 of the West Virginia Rules of Civil Procedure] to impose attorney's fees on litigants who bring vexatious and groundless lawsuits").

In support of the trial court's award of attorneys' fees to it, Suzuki applies the factors [11] we identified in *Bartles* to the facts of this case and states:

First, the plaintiff's misconduct was undeniably serious inasmuch as it shows an utter disregard for the integrity of the judicial system and fairness to others. Indeed the plaintiff's fraudulent conduct was worse than unethical; it was potentially criminal. *See* W. Va.Code § 61–3–24d (identifying the taking of another's property by fraud as a form of larceny).

Second, the plaintiff's filing of a fraudulent lawsuit had a major—indeed definitive—impact on the case and on the administration of justice. Without the fraud, there would have been no case, and the appellees would not have been forced to expend their time and resources defending the lawsuit.

Third, there were no mitigating circumstances that would reduce the plaintiff's culpability for his conduct. There is no evidence, for example, that Mr. Pritt's alleged psychological difficulties had anything to do with the fraud perpetrated in this case.

Finally, the misconduct was not limited to a single instance, but was an ongoing

11. Those factors can be categorized as (1) the seriousness of the misconduct; (2) the impact the conduct had in the case and in the administration of justice; (3) whether there are mitigating circumstances; and (4) whether the conduct was an isolated occurrence or was a pattern of wrongdoing. *See Bartles*, 196 W.Va. at 390, 472 S.E.2d at 836.

fraud that seemingly infected every one of the plaintiff's actions in this case.

*See Bartles*, 196 W.Va. at 390, 472 S.E.2d at 836 and syl. pt. 2; *accord State ex rel. Dodrill v. Egnor*, 198 W.Va. 409, 414, 481 S.E.2d 504, 509 (1996) (applying factors approved in *Bartles*). Suzuki observes additionally that the dismissal of Appellant's case, rather than being a sanction, is simply the disposition required under the rules of civil procedure once a claim is proved to be fraudulent and without merit.

Based on our review of the record, we are convinced that the trial court did not abuse its discretion in awarding attorneys' fees and costs to Suzuki as a sanction for Appellant's conduct in bringing a fraudulent claim. Moreover, the record reflects that the lower court considered the appropriate factors in determining that the itemized amount of fees submitted by Suzuki were reasonably and necessarily incurred. *See* Syl. Pt. 4, *Aetna Cas. & Sur. Co. v. Pitrolo*, 176 W.Va. 190, 342 S.E.2d 156 (1986) (identifying factors pertinent to ascertaining whether attorney's fees are reasonable); W.Va.R.Prof.Conduct 1.5(a) (listing factors for determining reasonableness of lawyer's fees).

▮ With regard to the trial court's decision to award attorneys' fees to Appellant's trial counsel, Appellant argues that there is no authority for such award. Appellant's contention is essentially that, because the fee arrangement between himself and Mr. Moch was a contingency fee agreement whereby counsel's fee was triggered by recovery for his client, the absence of recovery precludes the award of a fee. In other words, the failure of trial counsel to secure a benefit for Appellant negates the requirement to pay his fee.

▮ In stating his position, Appellant has overlooked a substantial body of law on the issue of an attorney's entitlement to a fee

notwithstanding a contingency fee agreement where the attorney was forced to withdraw from further representation of the client. *See generally* George L. Blum, Annotation, *Circumstances Under Which Attorney Retains Right to Compensation Notwithstanding Voluntary Withdrawal From Case*, 53 A.L.R.5th 287 (1997). It has long been the law in this state that an attorney who withdraws from representing his client for good cause retains a right to compensation for services rendered. In *Matheny v. Farley*, 66 W.Va. 680, 66 S.E. 1060 (1910), this Court stated that:

> the general rule prevailing in all jurisdictions, [is] that if an attorney, after he has been employed to perform an entire service, be discharged without good cause, or he abandons the case for good cause, or be prevented by the act of his client from full performance, he may recover the value of his services, or the entire amount agreed upon, depending on the circumstance of the case.

*Id.* at 682–83, 66 S.E. at 1060; *see Augustson v. Linea Aerea Nacional–Chile S.A.*, 76 F.3d 658, 663 (5th Cir.1996) (noting instances of culpable client conduct demonstrating just cause for attorney's withdrawal as including cases where client attempts to assert fraudulent claim and where "continued representation would violate ethical obligations"). In this case, Mr. Moch sought to withdraw from further representation of Appellant after the videotapes were viewed,[12] which captured his client performing various activities that were completely inconsistent with the plaintiff's theory of the case. The trial court found in its order entered on July 21, 1995, that Mr. Moch had just cause to withdraw as Appellant's trial counsel[13] based on the demonstration of Appellant's fraud as revealed through the videotapes.

12. Mr. Moch's motion to withdraw was not approved by the trial court for several weeks after the request was made.

13. The trial court found that "[o]nly upon the exhibition of the tapes of the plaintiff did it become apparent to plaintiff's counsel that further prosecution of the case would imperil the attorney's obligation to the Court and to their

oaths, so that the plaintiff's own conduct created a situation in which his counsel had to commit to the higher obligation to the system of civil justice." *See* W.Va.R.Prof.Conduct 1.16 (requiring attorney to withdraw from representation of client where client has used lawyers' services to perpetrate fraud).

 Citing the cases of *Farley* and *May v. Seibert,*[14] 164 W.Va. 673, 264 S.E.2d 643 (1980), the trial court ruled "that even though plaintiff's trial counsel were employed on a contingent fee basis, plaintiff's conduct as previously describe[d], deprived his trial counsel of the opportunity to earn a contingent fee, therefore entitling plaintiff's counsel to reasonable compensation for service performed plus the actual costs." In syllabus point one of *Seibert,* we held that

A lawyer may always withdraw from representing a client when he is justified in doing so because of 1) refusal by the client to pay agreed-upon expenses or fees; 2) conduct by a client that is unlawful, such as subornation of witnesses; 3) demand by a client that the lawyer perform illegally or unprofessionally; 4) the client obviously bringing or defending a suit or other legal activity solely to harass or maliciously injure another, or the claim or defense being not legally defensible; 5) requirement by a client that the lawyer associate with another lawyer with whom he cannot cordially cooperate; 6) physical or mental incapacity of the lawyer; or 7) client's other conduct that makes it unreasonably difficult for the lawyer to effectively do his work. In these situations the lawyer is entitled to so much of his fee as he has earned.

164 W.Va. at 673, 264 S.E.2d at 643–44.

While the entitlement to a fee is clear where the withdrawal is prompted by the client's wrongful actions, the amount of the fee to which the attorney is entitled is less clear. *See Law Offices of J.E. Losavio, Jr. v. Law Firm of Michael W. McDivitt, P.C.,* 865 P.2d 934, 936 (Col.Ct.App.1993) (stating that "although the existence of a contingency fee contract may be one of the factors considered in the calculation of a quantum meruit recov-ery, it is otherwise undeterminative of the total amount awarded except insofar as it sets the maximum permitted"). We held in *Seibert* that "[w]hen a lawyer withdraws for just cause, he is entitled to recover in quantum meruit for services rendered." 164 W.Va. at 681, 264 S.E.2d at 647. The existence of a contingency fee contract does not, however, negate the withdrawing counsel's entitlement to remuneration. *See Ambrose v. Detroit Edison Co.,* 65 Mich.App. 484, 237 N.W.2d 520, 524 (1975) (holding that attorney employed under contingency fee contract who is wrongfully discharged or who rightfully withdraws is entitled to compensation for reasonable value of his services); *accord* Syl. Pt.1, *Madison v. Goodyear Tire & Rubber Co.,* 8 Kan.App.2d 575, 663 P.2d 663, 664 (1983). "The rationale for this rule is apparent as it insures an attorney will be at least partially compensated for services rendered when forced to withdraw from a pending case as a result of forces beyond the attorney's control." *Tucker v. Rio Optical Corp.,* 20 Kan.App.2d 233, 885 P.2d 1270, 1272 (1994).

 Before a fee is awarded under the theory of quantum meruit, there must first be a determination of the reasonable value of the attorney's services rendered on behalf of the client. Identifying the reasonable value of an attorney's services requires an examination of various factors that concern such issues as the amount of time spent on the case, the difficulty of the case, and the outcome reached in the case. *See Stafford v. Bishop,* 98 W.Va. 625, 127 S.E. 501 (1925).[15] We recently set forth those factors that are to be considered in the context of determining quantum meruit compensation when two firms were involved in handling a case. *See Kopelman and Assocs., L.C. v. Collins,* 196 W.Va. 489, 473 S.E.2d 910 (1996).[16]

---

**14.** In *May,* we applied the principles announced in *Farley* when addressing whether an attorney who withdrew from representing clients after not being able to reach a settlement agreement was entitled to a portion of the settlement amount. 164 W.Va. at 675–81, 264 S.E.2d at 644–47.

**15.** The factors critical to a quantum meruit determination, as stated in *Bishop,* include: labor, time and trouble of counsel; difficulty of the case; responsibility assumed; results achieved; counsel's ability, skill, experience, and diligence; counsel's standing in the community; and the customary charges for such services. 98 W.Va. at 636, 127 S.E. at 504–05.

**16.** While we expressly indicated in *Kopelman* that the following list is not exhaustive, the factors to be considered in making a quantum meruit determination, where more than one firm or attorney is entitled to compensation, include: (1) the relative risks assumed by each firm; (2) the frequency and complexity of any difficulties encountered by each firm; (3) the proportion of

Our review of the record indicates that the trial court considered the factors relevant to a quantum meruit award of attorney's fees in setting the fee to which Mr. Moch was entitled. The lower court did not accept the $300 hourly rate asked for by Mr. Moch, but reduced that rate to $140. The court considered the expertise of Mr. Moch in handling ATV cases and the lengthy period of time invested in this case. The trial court was convinced beyond doubt that Appellant had duped his trial attorneys.[17]

As we stated in *Seibert*, "'the Court is loathe to deny an attorney compensation for services performed.'" 164 W.Va. at 680, 264 S.E.2d at 647 (quoting *Suffolk Roadways, Inc. v. Minuse*, 56 Misc.2d 6, 287 N.Y.S.2d 965 (1968)). Consistent with this Court's holding in *Bowling* that a finding of fraud demonstrated by clear and convincing evidence permits attorney's fees to be awarded, the lower court based its award of attorneys' fees on the fraud committed on both the court and on counsel. *See* 188 W.Va. at 475, 425 S.E.2d at 151; *see also Shepherd v. American Broadcasting Cos.*, 62 F.3d 1469, 1477 (D.C.Cir.1995) (observing that imposition of sanctions predicated on fraud upon court must be supported by clear and convincing evidence). This case presents a unique scenario;[18] it will not be often when the perpetration of a fraud is as self-evident as it was in this case. Although there is nothing in the record to suggest that Appellant's trial counsel had any basis for doubting their client, we emphasize that attorneys have an obligation pursuant to Rule 11 of the Rules of Civil Procedure to make reasonable inquiry that the pleadings they sign are "well grounded in fact" and that they are not "interposed for any improper purpose." *See also* W.Va.R.Prof.Conduct 3.1 (requiring claims asserted to be meritorious and not frivolous); *Lawyer Disciplinary Bd. v. Nee-*

ly, — W.Va. —, — S.E.2d —, 1998 WL 394699 (1998) (discussing frivolous lawsuits and observing that even when "all avenues of pre-suit investigation" have been exhausted, lawyers still may use discovery to uncover additional facts).

Based on our review of the record, we find no abuse of discretion in the trial court's award of attorneys' fees to Appellant's trial counsel or to counsel for Suzuki. This case illustrates the significance of sanctions, including awards of attorneys' fees, when valuable court resources have clearly been wasted and litigants with valid claims have experienced delayed access to the judicial system based on a claim that is both fraudulently asserted and pursued. *See Canady*, 175 W.Va. at 252, 332 S.E.2d at 265.

Based on the foregoing, the decision of the Circuit Court of Randolph County is hereby affirmed.

Affirmed.

Justice McGRAW did not participate.

---

funds invested and other contributions made by each firm; (4) the quality of representation; (5) the degree of skill needed to achieve success; (6) the result of each firm's efforts; (7) the reason the client changed firms; (8) the viability of the claim at transfer; and (9) the amount of recovery realized. 196 W.Va. at 491, 473 S.E.2d at 912, syl. pt. 2.

**17.** The trial court remarked:
It was just apparent to me as the trial progressed and as these tapes were shown, that

both Ms. Hendricks and Mr. Moch were just completely knocked off their feet and they were shocked; they were disappointed. They just had all the wind taken out of their sails.

**18.** We wish to emphasize that this Court's holding, which permits an award of attorney's fees to be made against a party's own attorney, requires evidence of fraud that is unmistakably clear and convincing in nature.