685 S.E.2d 250

**Barbara WARNER and Roy Warner, Plaintiffs Below, Appellees**

v.

**Leroy WINGFIELD, Jr., and Susan Wingfield, Defendants Below, Appellees**

**Erika H. Klie, Esq., Appellant.**

**No. 34495.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 2, 2009.

Decided Nov. 3, 2009.

---

Ronald W. Zavolta, Law Office of Ronald W. Zavolta, Wheeling, WV, for Appellant.

Stephen Godfrey Jory, McNeer, Highland, McMunn & Varner, Elkins, WV, for Appellees, Wingfields.

Jefferson Lee Triplett, Triplett & Triplett, Elkins, WV, for Appellees, Warners.

PER CURIAM:

This is an appeal by Erika Klie, former attorney for Roy and Barbara Warner (hereinafter "the Warners") from a decision of the Circuit Court of Randolph County requiring Ms. Klie to pay $12,236.33 in attorney fees incurred by Leroy and Susan Wingfield (hereinafter "the Wingfields") in defending themselves against a civil action filed against them by the Warners. Ms. Klie appeals the circuit court's order granting the Wingfields' motion for Rule 11 sanctions, contending that the lower court abused its discretion in awarding such sanctions against Ms. Klie, as the attorney representing the Warners. Subsequent to a thorough review of the record, briefs, and pertinent authority, this Court affirms the decision of the lower court.

I. Factual and Procedural History

This civil action was initiated when the Warners, through their attorney Ms. Klie, filed a complaint against the Wingfields on October 10, 2006, alleging invasion of privacy, trespass, assault,[1] outrage, and interference with right-of-way. The underlying dispute between these adjoining property owners was allegedly premised upon difficulties with a dog owned by the Wingfields and upon Mrs. Warner's insistence that she be permitted to mow certain portions of the lawn in front of the Wingfields' home, purportedly to "maintain" an underground utility easement. The Wingfields ultimately erected a fence between the two properties in an attempt to prevent Mrs. Warner from entering their property. Mrs. Wingfield thereafter spray painted a portion of the fence on the side facing the Warners' property.[2]

Discovery ensued[3] subsequent to the filing of the complaint, and the Wingfields filed a motion for summary judgment on March 12, 2007, claiming that the January 2007 deposition testimony of the Warners revealed an insufficiency of evidence to support the allegations asserted in the Warners' complaint. In response to the motion for summary judgment, the Warners agreed on March 27, 2007, to voluntarily dismiss the complaint, and Ms. Klie filed a notice of voluntary dismissal without prejudice. However, that dismissal document was not signed by the Wingfields' counsel, as required by Rule 41 of the West Virginia Rules of Civil Procedure. On March 28, 2007, the Wingfields filed a motion for sanctions under Rule 11 of the West Virginia Rules of Civil Procedure, alleging that Ms. Klie failed to perform any meaningful investigation to discover the frivolity and baseless nature of the cause of action asserted by her clients against the Wingfields.

---

1. The assault cause of action was voluntarily dismissed by Ms. Klie and the Warners after the depositions of the Warners were taken in January 2007.

2. The painted portion did not depict any particular words, pictures, or offensive materials. It was a series a differing colors of paints with no precise design.

3. Ms. Klie moved the trial court to continue scheduling conferences due to conflicts on her calendar. The trial court ultimately wrote Ms. Klie a letter dated December 8, 2006, asking Ms. Klie to evaluate whether or not she had "enough time to properly represent [her] clients in this case." The Warners allege that Ms. Klie never showed them a copy of that letter.

An initial hearing on the motion for sanctions was conducted on April 17, 2007. The trial court heard arguments regarding sanctions from Mr. Stephen Jory, on behalf of the Wingfields; Mr. Jefferson Triplett,[4] on behalf of the Warners; and Ms. Klie on her own behalf. Although Ms. Klie's staff members, Melissa Daugherty and Brandi Elders, were available to testify, the trial court indicated that their testimony was not necessary.[5] Ms. Daugherty and Ms. Elders submitted affidavits to the trial court indicating that they had participated extensively with Ms. Klie in the preparation of the Warners' case.[6]

Summary judgment was granted by the trial court at the April 17, 2007, hearing and thereafter confirmed in a order entered on August 21, 2007. The trial court scheduled another hearing to provide the Warners and Ms. Klie with an opportunity to demonstrate why sanctions should not imposed against them. This show cause hearing was conducted on August 27, 2007. The trial court again heard arguments from Mr. Jory for the Wingfields; Mr. Triplett for the Warners; and Ms. Klie on her own behalf. Ms. Klie did not request the trial court to hear testimony from her staff members at that hearing.

On December 21, 2007, the trial court entered an order concluding that Ms. Klie had "failed to make 'an inquiry reasonable under the circumstances' as required by Rule 11(b) of the West Virginia Rules of Civil Procedure." The trial court evaluated the disputed factual issues regarding Ms. Klie's diligence in preparing and investigating the allegations included within the complaint, observing that the Warners alleged that they did not meet with Ms. Klie before the complaint was filed. Although Ms. Klie asserted that she was briefly present in a meeting with the Warners prior to the filing of the complaint, the Warners maintained that they did not personally meet with Ms. Klie until November 17, 2006, over one month after the complaint was filed.

In announcing its ruling, the trial court stated that "sanctions are properly imposed upon [Ms. Klie] for the filing of frivolous and baseless claims before this Court." The trial court reasoned as follows:

Ms. Klie filed a five count complaint alleging, among other things, assault and the tort of outrage, but Ms. Klie indicated to the Court that "all we wanted was for the Defendants to purchase a couple gallons of paint and paint the fence." The Court does not believe that the relief sought justified the serious allegations made in the

4. Mr. Triplett was hired by the Warners after the attorney/client relationship between the Warners and Ms. Klie was severed.

5. Although Ms. Klie asserts on appeal that the trial court should have taken the testimony of her staff members, her efforts to motivate such action were minimal. At the hearing on April 17, 2007, Ms. Klie addressed the issue concerning the date upon which she first met with the Warners and informed that trial court that "I do have both of my full-time Staff Members in the hallway who have not been in here for this hearing who are prepared to testify." She did not await a response from the trial court or specifically request that such testimony be taken. She simply proceeded to explain her meetings with the Warners. She then concluded by offering her staff member testimony, as follows: "If the Court would like to hear from all my Staff in the hallway who can testify about the times I met with Mr. and Mrs. Warner I'll be happy to do that." The trial court responded, "Not at this time. . . ." Ms. Klie did not object to that decision and said, "I understand, Your Honor." She did not request the trial court to hear that testimony at all in the final hearing of August 27, 2007.

6. Specifically, Ms. Brandi Elders stated in her affidavit that she had traveled with Ms. Klie to the Randolph County courthouse to perform a title search in November 2006. Ms. Elders had also traveled to the courthouse in December 2006 to obtain copies of deeds. She explained that all work by staff members was performed under the direction of Ms. Klie. Ms. Elders described the Warners as very emotional and unfocused, and she also stated that Ms. Klie had met with the Warners on different occasions and had prepared for a deposition for three hours. Ms. Elders stated that Ms. Klie did inform the Warners of a counter-offer by the Wingfields.

Ms. Melissa Daugherty also stated in her affidavit that she assisted Ms. Klie in the Warner case and reiterated several points asserted by Ms. Elders. Ms. Daugherty explained that she had met with the Warners while Ms. Klie was absent from the office in August 2006. However, Ms. Daugherty asserts that Ms. Klie returned to the office and introduced herself to the Warners before they departed.

complaint, which were completely unfounded.

The trial court continued its account of Ms. Klie's actions, as follows:

> Prior to filing the complaint, Ms. Klie failed to do a cursory investigation of the claims contained therein. Count 3 of the complaint, for Assault, was voluntarily dismissed because Ms. Klie did not investigate the allegation. Ms. Klie says this error was due to a miscommunication, but has no explanation for such miscommunication. As indicated previously, all claims contained in the Complaint were admitted by the Plaintiffs to be false. Had Ms. Klie done her work on the case, she should have realized the claims were wholly without merit.

Regarding Ms. Klie's claim that she invested approximately 153 hours of legal work on this case, the trial court found "[n]othing contained in the file [to] even remotely justify her claims of 153 hours of work."[7] The court stated that "[i]n these months after the hearing, the Court, regrettably, has seriously questioned the accuracy and truthfulness of Ms. Klie's statements to the Court." Further, Ms. Klie did not produce any time records to support her claims of time expenditure. The trial court ordered sanctions against Ms. Klie in the amount of $12,236.33, the reasonable legal fees incurred by the Wingfields in defense of the civil action against them. Ms. Klie has appealed that ruling to this Court.

## II. Standard of Review

■ In *Davis ex rel. Davis v. Wallace*, 211 W.Va. 264, 565 S.E.2d 386 (2002), this Court explicitly stated that it "reviews a trial court's assessment of sanctions under an abuse of discretion standard." 211 W.Va. at 266, 565 S.E.2d at 388. In syllabus point one of *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995), this Court explained as follows:

> The West Virginia Rules of Evidence and the West Virginia Rules of Civil Procedure allocate significant discretion to the

trial court in making evidentiary and procedural rulings. Thus, rulings on the admissibility of evidence and the appropriateness of a particular sanction for discovery violations are committed to the discretion of the trial court. Absent a few exceptions, this Court will review evidentiary and procedural rulings of the circuit court under an abuse of discretion standard.

This Court has also stated that "[a] trial court abuses its discretion if its ruling is based on an erroneous assessment of the evidence or the law." *Bartles v. Hinkle*, 196 W.Va. 381, 389, 472 S.E.2d 827, 835 (1996) (discussing trial court's imposition of $10,000.00 sanction against party who repeatedly failed to comply with trial court's discovery orders); *see also* Syl. Pt. 4, in part, *State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 626, 474 S.E.2d 554, 556 (1996) (holding that "circuit court has discretion [under Rule 11 of the West Virginia Rules of Civil Procedure] to impose attorney's fees on litigants who bring vexatious and groundless lawsuits"). Thus, based upon the abuse of discretion standard, we proceed to the evaluation of Ms. Klie's appeal in this matter.

## III. Discussion

■ Rule 11(b) of the West Virginia Rules of Civil Procedure, in pertinent part, provides as follows:

> By presenting to the court . . . a pleading, written motion, or other paper, and (sic) attorney . . . is certifying that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

---

7. Ms. Klie maintained that she did not keep precise time records in this matter since her initial representation of the Warners was on a retainer fee basis, and continued representation was on a contingent fee basis.

(3) the allegations and other factual contentions have evidentiary support or, [if] specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

This Court, in evaluating the application of Rule 11 by trial courts, has consistently explained that "[a] court may order payment by an attorney to a prevailing party reasonable attorney fees and costs incurred as the result of his or her vexatious, wanton, or oppressive assertion of a claim or defense that cannot be supported by a good faith argument for the application, extension, modification, or reversal of existing law." Syllabus, *Daily Gazette Co., Inc. v. Canady*, 175 W.Va. 249, 332 S.E.2d 262 (1985). In *Daily Gazette*, this Court considered the devastating effects that unfounded lawsuits wreak upon the judicial system and explained as follows:

Although there is an undeniable interest in the maintenance of unrestricted access to the judicial system, unfounded claims or defenses asserted for vexatious, wanton, or oppressive purposes place an unconscionable burden upon precious judicial resources already stretched to their limits in an increasingly litigious society. In reality, to the extent that these claims or defenses increase delay or divert attention from valid claims or defenses asserted in good faith, they serve to deny the very access to the judicial system they would claim as justification for their immunity from sanction.

*Id.* at 252, 332 S.E.2d at 265.

■ In syllabus point two of *Bartles*, this Court further explained that the formulation of an appropriate sanction will be based upon precepts of equity.

In formulating the appropriate sanction, a court shall be guided by equitable principles. Initially, the court must identify the alleged wrongful conduct and determine if it warrants a sanction. The court must explain its reasons clearly on the record if it decides a sanction is appropriate. To determine what will constitute an appropriate sanction, the court may consider the seriousness of the conduct, the impact the conduct had in the case and in the adminis-

tration of justice, any mitigating circumstances, and whether the conduct was an isolated occurrence or was a pattern of wrongdoing throughout the case.

"The purpose of Rule 11 and Rule 37 of the West Virginia Rules of Civil Procedure is to allow trial courts to sanction parties who do not meet minimum standards of conduct in a variety of circumstances." *Bartles*, 196 W.Va. at 389, 472 S.E.2d at 835.

In *Pritt v. Suzuki Motor Co., Ltd.*, 204 W.Va. 388, 513 S.E.2d 161 (1998), this Court affirmed the trial court's award of attorney fees for the filing of a baseless lawsuit and applied various factors identified in *Bartles* to analyze the pertinent facts of the case. The *Pritt* Court explained that the factors were adeptly categorized in *Bartles* as "(1) the seriousness of the misconduct; (2) the impact the conduct had in the case and in the administration of justice; (3) whether there are mitigating circumstances; and (4) whether the conduct was an isolated occurrence or was a pattern of wrongdoing." *Pritt*, 204 W.Va. at 394 n. 11, 513 S.E.2d at 167 n. 11 (citing *Bartles*, 196 W.Va. at 390, 472 S.E.2d at 836); *accord State ex rel. Dodrill v. Egnor*, 198 W.Va. 409, 414, 481 S.E.2d 504, 509 (1996) (applying factors approved in *Bartles*).

In *Davis*, this Court explained that an "important purpose of Rule 11 ... is to prevent frivolous lawsuits or lawsuits filed for an improper purpose." 211 W.Va. at 267, 565 S.E.2d at 389. Although the majority in that opinion concluded that a civil action against a state's expert witnesses to recover for negligence was not frivolous and would not trigger imposition of sanctions, Chief Justice Davis dissented and very precisely analyzed the issues enumerated in *Daily Gazette*. In her dissent, she thoroughly evaluated the approach identified in *Daily Gazette* and elaborated as follows: "In other words, if a filing (1) is not warranted by existing law or (2) does not present a meritorious argument to extend, modify, or reverse existing law or to create new law, the court in which such filing has been made may assess sanctions against the individual(s) responsible for such frivolous filing." 211 W.Va. at 270, 565 S.E.2d at 392, Davis, C.J., dissenting.

In her concurrence to *Hinchman v. Gillette*, 217 W.Va. 378, 618 S.E.2d 387 (2005), Justice Davis aptly identified Rule 11 as the "gatekeeper" to preclude frivolous lawsuits. 217 W.Va. at 391, 618 S.E.2d at 400, Davis, J., concurring. That concurrence emphasized the burdens upon the attorney in the avoiding frivolity and abuse in the filing of civil actions.

> Under Rule 11(a), all pleadings must be signed by an attorney or unrepresented party. It has been noted "that a signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." Cleckley, Davis & Palmer, Litigation Handbook § 11(a), at 241 (2002).

217 W.Va. at 392, 618 S.E.2d at 401, Davis, J., concurring. As explained in the concurrence, Rule 11 imposes a duty to conduct a reasonable pre-filing inquiry into the basis for any pleading tendered to the court. Failure to execute such inquiry will result in punishment under Rule 11.

This Court has uniformly applied the standards discussed above in its review of proposed sanctions under Rule 11. Although the majority in *Davis* concluded that the facts of that case did not support a finding of a frivolous lawsuit, the summary provided by that opinion is critical. The *Davis* Court explained that "[a]t the heart of this case is the issue of whether the appellants filed a 'frivolous' lawsuit that was neither grounded in existing state law nor was 'a good faith argument for the application, extension, modification, or reversal of existing law.' " 211 W.Va. at 267, 565 S.E.2d at 389.

Reviewing the case sub judice upon the abuse of discretion standard, we must affirm the decision of the lower court. Although Ms. Klie contends that she and her staff adequately investigated the Warners' case before filing the civil action and that her actions were not in bad faith or for an oppressive reason, the record reveals other-

wise. The evidence before the trial court revealed that Ms. Klie had not met with the Warners to discuss the merits of their claim prior to the filing of the complaint or had met with them only briefly. Count three of the complaint, for assault, was ultimately voluntarily dismissed due to Ms. Klie's failure to obtain adequate information and support for the legal claims asserted in that count.

Ms. Klie contends that conversation with the Warners was laborious and that the error with regard to the assault count was due to a miscommunication. This Court's review indicates that such characterization might be equally applicable to other components of the underlying claim. The entire premise of the civil action appears to be based upon miscommunications or incorrect assumptions, resulting in the filing of an essentially baseless lawsuit by Ms. Klie on behalf of the Warners.[8] The absence of communication is also apparent in the fact that Ms. Klie failed to advise the Warners that the Wingfields had submitted a counter-offer during this litigation.

Ms. Klie challenges the trial court's decision regarding sanctions by referring to its failure to entertain the testimony of her two staff members, Melissa Daugherty and Brandi Elders. However, those two individuals did submit their affidavits for review by the trial court, and such affidavits presumably included all information sought to be offered by the staff members regarding the meetings conducted with the Warners. This matter has already been inflated from a neighborhood conflict into an excessively lengthy legal battle, and to reverse this matter based upon the trial court's failure to take testimony from these two staff members would be to exacerbate an already formidable abuse of the system.

Employing the factors identified in the precedent discussed above, this Court has examined "(1) the seriousness of the misconduct; (2) the impact the conduct had in the case and in the administration of justice; (3) whether there are mitigating circumstances;

---

8. Ms. Klie's expenditure of time was also addressed by the trial court, and the trial court found an absence of documented evidence of Ms. Klie's alleged expenditure of 153 hours of work on this case.

and (4) whether the conduct was an isolated occurrence or was a pattern of wrongdoing." *Pritt,* 204 W.Va. at 394 n. 11, 513 S.E.2d at 167 n. 11 (citing *Bartles,* 196 W.Va. at 390, 472 S.E.2d at 836). With regard to the seriousness of the misconduct, we do not find an abuse of discretion in the trial court's determination that Ms. Klie failed to sufficiently and thoroughly investigate the underlying facts of this case and determine the merits of the allegations contained in the complaint. A neighborhood dispute was parlayed into a civil action, alleging invasion of privacy, trespass, assault, outrage, and interference with right-of-way, without sufficient factual basis, as conspicuously demonstrated by the ultimate deposition testimony of the Warners.

The impact of Ms. Klie's actions was the abuse of the legal system through the attempted prosecution of a series of essentially baseless claims. No mitigating circumstances existed, and Ms. Klie's conduct was of a continuing nature throughout the litigation. We consequently find that the trial court did not abuse its discretion in granting sanctions against Ms. Klie, and we affirm that determination.

Affirmed.