332 S.E.2d 262

**The DAILY GAZETTE COMPANY, INC.**

v.

**The Honorable Herman G. CANADY, Judge, and Joseph C. Cometti.**

**No. 16581.**

Supreme Court of Appeals of West Virginia.

Submitted April 24, 1985.

Decided June 27, 1985.

---

Rudolph L. DiTrapano & Rebecca A. Baitty, Charleston, for petitioner.

Joseph C. Cometti, Charleston, for respondents.

McGRAW, Justice:

The petitioner, The Daily Gazette Co., Inc. seeks a writ of mandamus compelling reconsideration of its motion for attorney fees by respondent Judge Herman G. Canady of the Thirteenth Judicial Circuit sought in connection with the dismissal of a defamation action filed by respondent attorney Joseph C. Cometti. Although the respondent judge rejected this request for an award of attorney fees based upon his perception of an absence of authority, the petitioner contends that the ability of a trial court to assess attorney fees against counsel who has acted in bad faith is founded in the exercise of its inherent powers, and is not dependent upon either statutory or regulatory authorization.

As a general rule, each litigant bears his or her own attorney fees absent express statutory, regulatory, or contractual authority for reimbursement. *See Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. 445, 300 S.E.2d 86, 91 (1982). This rule, however, known as the "American rule," is subject to a number of judicially created exceptions. *See* Mallor, *Punitive Attorneys' Fees for Abuses of the Judicial System,* 61 N.C.L.Rev. 613, 619–52 (1983). For example, in *Nelson v. West Virginia Public Employees Insurance Board,* 171 W.Va. at 451, 300 S.E.2d at 92, this Court noted that, "A well established exception to the general rule prohibiting the award of attorney fees in the absence of statutory authorization, allows the assessment of fees against a losing party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *See, e.g., Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Vaughan v. Atkinson,* 369 U.S. 527, 82

S.Ct. 997, 8 L.Ed.2d 88 (1962); *see also Annot.,* 31 A.L.R.Fed. 833 (1977)."

In *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488, 500 (1980), the United States Supreme Court held that "in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel." Previously, in *Link v. Wabash R. Co.,* 370 U.S. 626, 630–31, 82 S.Ct. 1386, 1389, 8 L.Ed.2d 734, 738 (1962), where a trial court's dismissal of an action for failure to prosecute was challenged, the Court had stated that, "The authority … to dismiss sua sponte for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." (Footnote omitted). Later, in *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. at 258–59, 95 S.Ct. at 1622, 44 L.Ed.2d at 154, where an appellate court's award of attorney fees to environmental organizations based upon the "private attorney general" theory of recovery was challenged, the Court, although rejecting this theory of attorney fees recovery, acknowledged the "inherent power" of courts to "assess attorney's fees … when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons….' " *F.D. Rich Co. [v. United States ex rel. Industrial Lumber Co.],* 417 U.S. [116], at 129, [94 S.Ct. 2157, 2165, 40 L.Ed.2d 703, 714] [ (1974) ] (citing *Vaughan v. Atkinson,* 369 U.S. 527, [82 S.Ct. 997, 8 L.Ed.2d 88] (1962))." Finally, in *Roadway Express,* 447 U.S. at 766–67, 100 S.Ct. at 2464, 65 L.Ed.2d at 501–02, the Court concluded that:

> The power of a court over members of its bar is at least as great as its authority over litigants. If a court may tax counsel fees against a party who has litigated in bad faith, it certainly may assess those expenses against counsel who willfully abuse judicial processes. *See* Renfrew, *Discovery Sanctions: A Judicial Perspective,* 67 Calif.L.Rev. 264, 268 (1979). Like other sanctions, attorney's fees certainly should not be assessed lightly or without fair notice and an opportunity for a hearing on the record. But in a proper case, such sanctions are within a court's powers. [Footnotes omitted].

The concept of the "inherent power" of the judiciary is well recognized in this jurisdiction. In Syllabus Point 3 of *Shields v. Romine,* 122 W.Va. 639, 13 S.E.2d 16 (1940), this Court noted the general rule that, "A court 'has inherent power to do all things that are reasonably necessary for the administration of justice within the scope of its jurisdiction.' 14 Am.Juris., Courts, section 171." *See also Virginia Electric & Power Co. v. Haden,* 157 W.Va. 298, 306, 200 S.E.2d 848, 853 (1973); Syl. pt. 2, *Frazee Lumber Co. v. Haden,* 156 W.Va. 844, 197 S.E.2d 634 (1973). This Court has acknowledged inherent judicial powers in a variety of contexts at both the appellate and trial court levels. *See, e.g., In re Pauley,* 173 W.Va. 228, 314 S.E.2d 391, 396 (1984) (provision and supervision of court personnel); Syl. pt. 4, *Prager v. Meckling,* 172 W.Va. 785, 310 S.E.2d 852 (1983) (imposition of sanctions to maintain a fair and orderly trial); *In re L.E.C.,* 171 W.Va. 670, 301 S.E.2d 627, 630 (1983) (supervision, regulation, definition, and control of the practice of law); *Perlick & Co. v. Lakeview Creditor's Trustee Committee,* 171 W.Va. 195, 298 S.E.2d 228, 235 (1982) (elimination of dormant cases from judicial dockets); *E.H. v. Matin,* 168 W.Va. 248, 284 S.E.2d 232 (1981) (transfer of actions to lower tribunals for further proceedings); *State v. Daggett,* 167 W.Va. 411, 280 S.E.2d 545, 556 n. 3 (1981) (compulsion of attendance by witnesses); *Sparks v. Sparks,* 165 W.Va. 484, 269 S.E.2d 847, 848 (1980) (grant of custody of a child to a person outside jurisdiction of court or permission to one who has custody to take child to another state or foreign jurisdiction); *Hendershot v. Hendershot,* 164 W.Va. 190, 263 S.E.2d 90, 96–97 (1980) (imposition of civil contempt sanctions); *State ex rel. Goodwin v. Cook,* 162 W.Va. 161, 171–72, 248 S.E.2d 602, 607–08 (1978) (appointment of special prosecutor); Syl. pt. 3, *State ex rel. Bagley v. Blankenship,* 161 W.Va. 630, 246 S.E.2d 99 (1978) (determination of funding necessary for the effective operation of the judiciary); *State ex rel. Moran v. Ziegler,* 161 W.Va. 609, 614, 244 S.E.2d 550, 553

(1978) (disqualification of private prosecutor); *Eastern Associated Coal Corp. v. Doe*, 159 W.Va. 200, 208, 220 S.E.2d 672, 678 (1975) (enforcement of judicial orders); *Corbin v. Corbin*, 157 W.Va. 967, 980, 206 S.E.2d 898, 906 (1974) (modification of divorce decrees); *Virginia Electric & Power Co. v. Haden*, 157 W.Va. at 306, 200 S.E.2d at 853 (transfer of actions to administrative agencies for further proceedings); *State v. Cowan*, 156 W.Va. 827, 834, 197 S.E.2d 641, 645 (1973) (direction of pretrial discovery); *Maxwell v. Stalnaker*, 142 W.Va. 555, 563, 96 S.E.2d 907, 912 (1957) (adjudication of payment of costs); *State ex rel. Chemical Tank Lines, Inc. v. Davis*, 141 W.Va. 488, 493, 93 S.E.2d 28, 31 (1956) (prescription and enforcement of rules and regulations for the conduct of judicial business).

■ Although there is an undeniable interest in the maintenance of unrestricted access to the judicial system, unfounded claims or defenses asserted for vexatious, wanton, or oppressive purposes place an unconscionable burden upon precious judicial resources already stretched to their limits in an increasingly litigious society. In reality, to the extent that these claims or defenses increase delay or divert attention from valid claims or defenses asserted in good faith, they serve to deny the very access to the judicial system they would claim as justification for their immunity from sanction. Certainly, the lawyer owes a duty of zealous representation to his or her client. In addition, however, the lawyer is charged with concurrent obligations to both the system of justice and those involved in the legal process.

As recognized in our Code of Professional Responsibility, "The duty of a lawyer, both to his client and to the legal system, is to represent his client zealously *within the bounds of the law....*" Ethical Consideration 7–1 (Emphasis added). We acknowledge that the parameters of the law are often inexact and that "[c]ertainty of law ranges from well-settled rules through areas of conflicting authority to areas without precedent." Ethical Consideration 7–2. Therefore, an attorney's "conduct is within the bounds of law ... if the position taken is supported by the law or is supportable

by a good faith argument for an extension, modification, or reversal of the law." Ethical Consideration 7–4. On the other hand, "a lawyer is not justified in asserting a position in litigation that is frivolous." Ethical Consideration 7–4; *see also* Ethical Consideration 7–5.

In addition to a lawyer's duty to the system of justice, our Code of Professional Responsibility also recognizes that, "The duty of a lawyer to represent his client with zeal does not militate against his concurrent obligation to treat with consideration all persons involved in the legal process and to avoid the infliction of needless harm." Ethical Consideration 7–10. For example, Ethical Consideration 7–25 provides, "a lawyer should not ask a witness a question solely for the purpose of harassing or embarrassing him." Similarly, Rule 11 of the West Virginia Rules of Civil Procedure provides that an attorney may be disciplined "if scandalous or indecent matter is inserted" into a pleading.

■ Rule 11 of the West Virginia Rules of Civil Procedure provides that, "The signature of the attorney first signing a pleading constitutes a certificate by him that he has read it; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay." This rule reflects the dual concern with discouraging both frivolity and abuse found in the Code of Professional Responsibility, and places certain burdens upon the attorney with respect to his or her gatekeeping function. As noted in Disciplinary Rule 7–102(A)(1) and (2) of the Code of Professional Responsibility, a lawyer should not:

File a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of his client when he knows or when it is obvious that such action would serve merely to harass or maliciously injure another [or] [k]nowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.

Although the rules and ethical considerations mentioned in the foregoing discussion do not explicitly provide for the award of counsel fees and costs against an attorney who asserts frivolous claims or defenses in bad faith, they serve to form the parameters for our recognition of this inherent judicial power which derives from a court's role in the supervision of the administration of justice. We find the rationale of the United States Supreme Court in *Roadway Express* both persuasive and consonant with our prior holdings in this area, and therefore hold that a court may order payment by an attorney to a prevailing party reasonable attorney fees and costs incurred as the result of his or her vexatious, wanton, or oppressive assertion of a claim or defense that cannot be supported by a good faith argument for the application, extension, modification, or reversal of existing law.

With respect to the instant proceeding, given the circuit court's conclusion that it lacked jurisdiction to grant the relief requested, the record is insufficiently developed to render a reasoned decision with respect to the proper award, if any, of attorney fees and costs against respondent Cometti. For example, we note that no evidence of vexatiousness, wantonness, or oppressiveness has been presented. We firmly reject the petitioner's implication that frivolity alone will support a finding of bad faith. Certainly, as the frivolousness of a claim or defense increases, the likelihood that it is being advanced for improper purposes increases. In some cases, however, frivolity may be less a function of improper motive than of sheer incompetence.

For the foregoing reasons, we award a writ of mandamus compelling the respondent judge to conduct a hearing on the record to determine whether the award of attorney fees and costs to the petitioner is proper in the instant proceeding.

Writ granted with directions.