IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2020 Term

_____

No. 18-0271

_____

FILED
**April 3, 2020**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

EDWARD JESSE DREYFUSE,
IN RE: APPLICATION TO PRESENT COMPLAINT
TO THE GRAND JURY

_____

Appeal from the Circuit Court of Cabell County
The Honorable Alfred E. Ferguson, Judge
Case No. 17-C-394

REVERSED AND REMANDED WITH DIRECTIONS

_____

Submitted: January 28, 2020
Filed: April 3, 2020

Crystal L. Walden, Esq.
Director of Appellate Advocacy Division
Robert F. Evans, Esq.
Public Defender Services
Charleston, West Virginia
Counsel for Petitioner,
Edward Jesse Dreyfuse

Patrick Morrisey, Esq.
Attorney General
Lindsay S. See, Esq.
Solicitor General
John M. Masslon II, Esq.
Assistant Solicitor General
Thomas T. Lampman, Esq.
Assistant Solicitor General
Charleston, West Virginia
Counsel for Respondent,
State of West Virginia

CHIEF JUSTICE ARMSTEAD delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1. "In reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review. We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review." Syl. Pt. 2, *Walker v. W. Va. Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997).

2. "By application to the circuit judge, whose duty is to insure access to the grand jury, any person may go to the grand jury to present a complaint to it. W.Va. Const. art. 3, § 17." Syl. Pt. 1, *State ex rel. Miller v. Smith*, 168 W. Va. 745, 285 S.E.2d 500 (1981).

3. "Under West Virginia Constitution art. III, § 17, the right of self-representation in civil proceedings is a fundamental right which cannot be arbitrarily or unreasonably denied." Syl. Pt. 1, *Blair v. Maynard*, 174 W.Va. 247, 324 S.E.2d 391 (1984).

4. "The fundamental right of self-representation recognized in West Virginia Constitution art. III, § 17 may not be denied without a clear showing in the record that the *pro se* litigant is engaging in a course of conduct which demonstrates a clear intention to obstruct the administration of justice." Syl. Pt. 2, *Blair v. Maynard*, 174 W.Va. 247, 324 S.E.2d 391 (1984).

5. "Under West Virginia Constitution art. III, § 17, prisoners have a Constitutional right to meaningful access to our courts subject to reasonable limitations

imposed to protect courts from abuse." Syl. Pt. 2, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

6.     "Where a circuit court is faced with a potential abuse of process by a prisoner or a prisoner's threat to abuse the judicial process, the circuit court may, subject to the following, enter an order imposing reasonable limitations on the prisoner's right to access the court. Prior to the entry of such an order, the circuit court must provide the prisoner an opportunity to show cause why such a limitation should not be imposed. If the record demonstrates a clear intention to obstruct the administration of justice, the circuit court may impose limitations on the prisoner's right of access. Any order limiting a prisoner's access to the courts must be designed to preserve his right to adequate, effective, and meaningful access to our courts. The circuit court's order imposing such a limitation must include such findings of fact and conclusions of law adequate for meaningful appellate review." Syl. Pt. 5, *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006).

7.     "[A] circuit court has supervisory powers over grand jury proceedings to preserve the integrity of the grand jury process and to insure the proper administration of justice[.]" Syl. Pt. 2, in part, *State ex rel. Hamstead v. Dostert*, 173 W.Va. 133, 313 S.E.2d 409 (1984).

8.     A private citizen's right under West Virginia Constitution art. III, § 17 to present a complaint to the grand jury upon application to the circuit court is subject to reasonable limitations to protect our judicial system from abuse.

9.     A circuit court may not deny a private citizen's application to present a complaint to the grand jury without a showing that the private citizen's conduct

demonstrates a clear intention to obstruct the administration of justice. A circuit court's order denying a private citizen's application to present a complaint to the grand jury must include such findings of fact and conclusions of law adequate for meaningful appellate review.

10. "Except where there is a specific statutory exception, a magistrate may not issue a warrant or summons for a misdemeanor or felony solely upon the complaint of a private citizen without a prior evaluation of the citizen's complaint by the prosecuting attorney or an investigation by the appropriate law enforcement agency." Syl. Pt. 1, in part, *Harman v. Frye*, 188 W.Va. 611, 425 S.E.2d 566 (1992).

11. When a private citizen seeks to present a complaint to the grand jury, he must first apply to the circuit court. The circuit court shall then provide a copy of the application to the prosecuting attorney. Upon receipt of the private citizen's application, the prosecuting attorney may then initiate grand jury proceedings based on the allegations in the private citizen's application or he may decline to do so. If a prosecuting attorney declines to initiate grand jury proceedings, or does not act upon the application within a reasonable period of time, the private citizen may seek review of their application in the circuit court. In reviewing the private citizen's application after a prosecuting attorney declines to initiate grand jury proceedings or does not act upon the application within a reasonable period of time, the circuit court shall conduct an *in camera* hearing to provide the private citizen and the prosecuting attorney an opportunity to address the court regarding the private citizen's application.

ARMSTEAD, Chief Justice:

Petitioner Edward Jesse Dreyfuse ("Mr. Dreyfuse") was convicted of first-degree murder and burglary in October of 2013. The evidence presented at trial demonstrated that Mr. Dreyfuse attacked an elderly, disabled man ("victim") with a baseball bat. Mr. Dreyfuse did not pursue a direct appeal following his convictions. He has, however, sought both state and federal habeas relief. Additionally, in November of 2017, Mr. Dreyfus filed a private citizen application seeking to present a complaint to the grand jury. In his application to the circuit court, Mr. Dreyfuse asserted that during the course of the grand jury proceedings that resulted in his indictments for murder and burglary, a police officer perjured himself and the prosecuting attorney suborned perjury, when the police officer testified about the injuries Mr. Dreyfuse's victim suffered. The circuit court denied Mr. Dreyfuse's application to present a complaint to the grand jury. The circuit court's order only provides "[u]pon review of the application, the Court is of the opinion that the application should be denied."

Following entry of this order, Mr. Dreyfuse filed the instant appeal. He asserts that the circuit court's order denying his application was improper because the circuit court usurped the grand jury's role. According to Mr. Dreyfuse, a circuit court's sole function when presented with a private citizen's application to present a complaint to the grand jury "is to 'insure' that any person may go to the grand jury to present a complaint." By contrast, the State argues that Mr. Dreyfuse's application to present a complaint to the grand jury was abusive and frivolous. According to the State, the circuit court's supervisory power over

1

the grand jury imbues it with the discretion to refuse a private citizen's application to present a complaint to the grand jury when the application is abusive or frivolous.

After review, we agree with the State that a circuit court may refuse a private citizen's application to present a complaint to the grand jury if it determines that such application constitutes an abuse of process. However, the circuit court failed to set forth any findings of fact or conclusions of law explaining why it denied Mr. Dreyfuse's application. Therefore, we reverse the circuit court's order and remand this matter to the circuit court for further proceedings consistent with our ruling herein.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Dreyfuse was indicted on one count of first-degree murder, one count of burglary, and two counts of assault during the commission of a felony in June of 2012.[1] During the grand jury proceedings, the prosecuting attorney, Christopher Chiles[2] ("Prosecutor Chiles"), had the following exchange with a police officer, Ryan Bentley ("Officer Bentley"):

> Q.     Would you tell the Grand Jury about this case?
>
> A.     Yes, sir. On Monday, April 9th, 2012, at approximately 0129 hours, an Edward Jesse Dreyfuse forcibly kicked open and entered 938 Washington Avenue, in Cabell County, without permission. The residence is that of Otis Clay, Jr.

---

[1] The two assault charges were dismissed prior to trial.

[2] Mr. Chiles was Cabell County's prosecutor in 2012. He is currently a circuit court judge in Cabell County.

2

Inside Mr. Clay's residence, Mr. Dreyfuse obtained a black aluminum baseball bat and struck Mr. Clay about the face, head and body multiple times causing the following injuries: a broken leg, a broken arm, four broken ribs, three broken fingers, facial fractures, and a major skull fracture. . . .

Mr. Clay was transported to St. Mary's Hospital where he slipped into a coma, remaining in that state until he died from his injuries on May 2nd, 2012.

The case proceeded to trial in October of 2013. Multiple witnesses testified that Mr. Dreyfuse attacked the victim with a baseball bat because Mr. Dreyfuse believed the victim provided fake crack cocaine that Mr. Dreyfuse purchased. One eyewitness to the attack, James Marcum, testified "I seen him [Mr. Dreyfuse] busting his [the victim's] head and brains and everything. I cleaned his brains and blood up, I did." Mr. Marcum identified the baseball bat and then stated, "[t]hat's what beat his [the victim's] brains out." Another witness, Laura Malone, walked into the residence as Mr. Dreyfuse was holding the baseball bat while standing over the victim. She stated that after another individual attempted to subdue Mr. Dreyfuse, "I went to [the victim]. I took my shirt off, I wrapped it around [the victim's] head." When asked if the victim's head was bleeding "pretty badly," Ms. Malone replied, "yes."

The victim's attending physician, Dr. David Denning, testified that the victim's cause of death was "multiple trauma due to assault. Injuries included cerebral concussion, left sided rib fractures, right femur fracture, left elbow fracture, [and] left phalanx, which is finger fracture." Dr. Denning stated that the victim suffered a traumatic brain injury. When asked if the victim's injuries "were consistent with the injuries which

3

would have been received by being beaten with a baseball bat," Dr. Denning replied, "sure."

Dr. Allen Mock, an assistant medical examiner for the State of West Virginia, performed the autopsy. Dr. Mock testified that "the manner of death was a homicide . . . [and] there was evidence of blunt force injuries to the head and the extremities and the thorax."

At the conclusion of the four-day jury trial, Mr. Dreyfuse was convicted of first-degree murder and burglary. He was sentenced to a term of life, without mercy, for his first-degree murder conviction, and one to fifteen years of incarceration for his burglary conviction. Mr. Dreyfuse did not pursue a direct appeal following his convictions.[3]

In November of 2017, Mr. Dreyfuse filed a private citizen application to present a complaint to the Cabell County Grand Jury to obtain indictments against Prosecutor Chiles and Officer Bentley. According to Mr. Dreyfuse, Officer Bentley perjured himself in his testimony before the grand jury—and Prosecutor Chiles suborned perjury by eliciting the testimony—when he testified about the injuries that Mr. Dreyfuse caused the victim to suffer. Mr. Dreyfuse asserts that Officer Bentley falsely testified that

---

[3] Mr. Dreyfuse filed an appeal in December of 2014. However, after the matter remained on the Court's docket for over a year without being perfected, Mr. Dreyfuse withdrew the appeal. The State's brief to this Court notes that Mr. Dreyfuse has been "an extremely active litigant in the wake of his conviction, instigating a variety of collateral proceedings including multiple state habeas petitions, a petition for review, a FOIA request, and at least one mandamus petition in this Court, as well as a petition seeking federal habeas relief." In addition, Mr. Dreyfuse has sought recusal of various judicial officials throughout these proceedings.

(continued . . .)

4

the victim suffered broken ribs, broken fingers, facial fractures and a major skull fracture. These alleged injuries "are all absent from the decedent's medical records," according to Mr. Dreyfuse.

On March 29, 2018, the circuit court issued an order denying Mr. Dreyfuse's application to appear before the grand jury.[4]  The circuit court's order did not include any findings of fact or conclusions of law explaining its ruling.  The order only provides "[u]pon review of the application, the Court is of the opinion that the application should be denied."  After entry of this order, Mr. Dreyfuse filed the present appeal of the circuit court's March 29, 2018, order.[5]

## II. STANDARD OF REVIEW

This Court has held that

[i]n reviewing challenges to the findings and conclusions of the circuit court, we apply a two-prong deferential standard of review.  We review the final order and the ultimate disposition under an abuse of discretion standard, and we review the circuit court's underlying factual findings under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

---

[4] The circuit court issued an order denying Mr. Dreyfuse's application on March 7, 2018.  It issued a second, nearly identical, order denying the application on March 29, 2018. It appears that the purpose of the second order was to make clear that its denial of Mr. Dreyfuse's application was a final order.

[5] Mr. Dreyfuse was self-represented when he filed his initial brief to this Court. By order entered on September 5, 2019, this Court granted Mr. Dreyfuse's motion for appointment of counsel.  Counsel for Mr. Dreyfuse subsequently filed a supplemental brief.

Syl. Pt. 2, *Walker v. W. Va. Ethics Comm'n*, 201 W.Va. 108, 492 S.E.2d 167 (1997). With these standards as guidance, we consider the parties' arguments.

### III. ANALYSIS

This case requires us to examine a circuit court's role when it is presented with a private citizen's application to present a complaint to the grand jury. Both parties agree that this Court has not addressed this issue in detail. Mr. Dreyfuse argues that the circuit court's denial of his application to present a complaint to the grand jury was unconstitutional because "the [circuit] court's function is to 'insure' that any person may go to the grand jury to present a complaint." He asserts that "there is no manner by which a [circuit] court can determine the merit of a person's felony complaint, because both the United States Constitution and the West Virginia Constitution grant that power to the grand jury alone." Allowing a circuit court to determine whether a private citizen's complaint has merit would make the grand jury moot according to Mr. Dreyfuse. Stated simply, Mr. Dreyfuse claims that a circuit court's singular duty upon receiving a private citizen's application to present a complaint to the grand jury is to grant access to the grand jury.

The State argues that the circuit court's denial of Mr. Dreyfuse's application should be affirmed. It asserts that "this Court has routinely held that the circuit courts have both the power and the duty to supervise grand jury proceedings to prevent abuse of the judicial process and to ensure the fairness and integrity" of our criminal justice system. The State suggests that Mr. Dreyfuse's application "was both abusive and frivolous." However, the State acknowledges that the circuit court's order failed to include any analysis

6

explaining its ruling and concedes that remanding this case to the circuit court for entry of an order explaining its ruling would be proper.

Our review will begin with an examination of *State ex rel. Miller v. Smith*, 168 W. Va. 745, 285 S.E.2d 500 (1981) ("*Miller*"), in which this Court recognized that a private citizen has a constitutional right to present a complaint to the grand jury. After discussing *Miller*, we will proceed to examine: 1) whether a circuit court may apply reasonable limitations to a private citizen's constitutional right to access our court system; 2) whether a circuit court possesses supervisory authority over a grand jury; and 3) the specific process that should occur when a private citizen seeks to present a complaint to the grand jury.

### A. *Miller*

In *Miller*, a malicious assault victim submitted evidence of the assault to the prosecuting attorney. *Id.* at 747, 285 S.E.2d at 501. After the prosecuting attorney declined to present the matter to the grand jury, the victim applied to the circuit court to present a complaint to the grand jury. The victim was not permitted to present his complaint to the grand jury and filed a writ with this Court. *Id.* at 748, 285 S.E.2d at 502. This Court's review began with an examination of the purpose of our grand jury system. It noted that "historically the grand jury serves a dual function: it is intended to operate both as a sword, investigating cases to bring to trial persons accused on just grounds, and as a shield, protecting citizens against unfounded malicious or frivolous prosecutions." *Id.* at 751, 285 S.E.2d at 504. Additionally, the Court provided:

As criminal offenses are offenses against the State which must be prosecuted in the name of the State, the prosecutor, as the officer charged with prosecuting such offenses, has a duty to vindicate the victims and the public's constitutional right of redress for a criminal invasion of rights. The "spirit of law" has long been and it has been long held that the public has rights as well as the accused, and one of the first of these is that of redressing or punishing their wrongs.

*Id.* at 752–53, 285 S.E.2d at 504 (citations and quotation omitted).

The Court, relying on West Virginia Constitution art. III, § 17,[6] concluded that the grand jury must be open to the public as a matter of constitutional right and held that "[b]y application to the circuit judge, whose duty is to insure access to the grand jury, any person may go to the grand jury to present a complaint to it. W.Va. Const. art. 3, § 17." Syl. Pt. 1, *Miller*.

After *Miller*, this Court has reaffirmed the right of a private citizen to present a complaint to the grand jury. *See State ex rel. R.L. v. Bedell*, 192 W. Va. 435, 452 S.E.2d 893 (1994) (holding that indictment obtained by way of private citizen application is valid even in the absence of attesting signature of prosecuting attorney); *Comm. on Legal Ethics of the W. Va. State Bar v. Sheatsley*, 192 W. Va. 272, 278 452 S.E.2d 75, 81 (1994) (Cleckey, J., concurring) (discussing art. III, § 17 and reiterating that the Court relied on it to hold that a private citizen may present a complaint to a grand jury). However, this Court has not

---

[6] West Virginia Constitution art. III, § 17 provides "[t]he courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay."

addressed the scope of a circuit court's role upon receiving an application from a private citizen seeking to present a complaint to the grand jury.

**B. Constitutional Right to Access Our Courts Subject to Reasonable Limitations**

In examining the circuit court's role upon receiving a private citizen's application, we begin by addressing whether a circuit court may apply reasonable limitations to a private citizen's constitutional right, West Virginia Constitution art. III, § 17, to access our court system. According to Mr. Dreyfuse, the circuit court may not limit a private citizen's constitutional right to appear before the grand jury. Rather, the circuit court's singular role in this regard is to grant the private citizen access to the grand jury. We disagree.

This Court has, on multiple occasions, determined that a person's constitutional right to access our court system is subject to reasonable limitations. In *Blair v. Maynard*, 174 W.Va. 247, 324 S.E.2d 391 (1984), the Court addressed a person's right of self-representation in a civil proceeding. In syllabus point one of *Blair*, we held, "[u]nder West Virginia Constitution art. III, § 17, the right of self-representation in civil proceedings is a fundamental right which cannot be arbitrarily or unreasonably denied." The Court recognized that the right of self-representation is not absolute. In syllabus point two of *Blair*, we held "[t]he fundamental right of self-representation recognized in West Virginia Constitution art. III, § 17 *may not be denied without a clear showing in the record that the pro se litigant is engaging in a course of conduct which demonstrates a clear intention to obstruct the administration of justice*." (Emphasis added.)

9

Similarly, this Court has recognized that a prisoner has a constitutional right to access our courts. In syllabus point two of *Mathena v. Haines*, 219 W.Va. 417, 633 S.E.2d 771 (2006), the Court held, "[u]nder West Virginia Constitution art. III, § 17, prisoners have a Constitutional right to meaningful access to our courts *subject to reasonable limitations imposed to protect courts from abuse.*"[7] (Emphasis added.) The Court in *Mathena* provided the following process for a circuit court to follow when confronted with a prisoner's potential abuse of process:

> Where a circuit court is faced with a potential abuse of process by a prisoner or a prisoner's threat to abuse the judicial process, the circuit court may, subject to the following, enter an order imposing reasonable limitations on the prisoner's right to access the court. Prior to the entry of such an order, the circuit court must provide the prisoner an opportunity to show cause why such a limitation should not be imposed. If the record demonstrates a clear intention to obstruct the administration of justice, the circuit court may impose limitations on the prisoner's right of access. Any order limiting a prisoner's access to the courts must be designed to preserve his right to adequate, effective, and meaningful access to our courts. The circuit court's order imposing such a limitation must include such findings of fact and conclusions of law adequate for meaningful appellate review.

Syl. Pt. 5, *Mathena*.

---

[7] "Generally, abuse of process consists of the willful or malicious misuse or misapplication of lawfully issued process to accomplish some purpose not intended or warranted by that process." *Preiser v. MacQueen*, 177 W.Va. 273, 279, 352 S.E.2d 22, 28 (1985).

10

Likewise, in *State ex rel. James v. Hun*, 201 W. Va. 139, 141, 494 S.E.2d 503, 505 (1997), the Court noted that the "right of meaningful access to the courts is not completely unfettered." We recently emphasized that the legal process may not be used for an improper purpose:

> Everyone who has a good faith dispute requiring a decision by an impartial arbiter is entitled to his day in court. On the other hand, every person is not entitled to his day in court regardless of the frivolous nature of the suit. Parties whose interest in the legal process is to oppress or cheat others should be discouraged.

*Mark V.H. v. Dolores J.M.*, No. 18-0230, 2019 WL 4257183, at *13 (W.Va. September 9, 2019), 2019) (memorandum decision) (*quoting Nelson v. W.Va. Pub. Emp. Ins. Bd.*, 171 W. Va. 445, 453-54, 300 S.E.2d 86, 95 (1982)).

### C. Circuit Court's Supervisory Authority Over the Grand Jury

Consistent with the foregoing case law demonstrating that the right of access to our courts does not permit a person to abuse the judicial process, this Court has provided that a circuit court has supervisory authority over the grand jury to prevent abuse. In *State ex rel. Casey v. Wood*, 156 W.Va. 329, 333-34, 193 S.E.2d 143, 145 (1972), the Court provided:

> It is true that normally there is no limitation on the character of the evidence that may be presented to the grand jury. *See Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626. But this does not mean that the court which convened the grand jury does not have control over its process and does not have jurisdiction to rule on a motion pertaining thereto. *United States v. United States District Court*, 4 Cir., 238 F.2d 713; *In Re Grand Jury Proceedings, Harrisburg,*

11

*Pennsylvania*, 3 Cir., 450 F.2d 199, affirmed in *Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179.

The grand jury is an arm or agency of the court by which it is convened and such court has control and supervision over the grand jury. *United States v. Smyth, D.C.*, 104 F. Supp. 283. A grand jury has no independent existence, but is a part of and an adjunct to the court. *State ex rel. Martin v. Michell,* Fla.App., 188 So.2d 684. It should also be noted that a grand jury has no power to compel a witness to testify, but only the court can exercise such compulsion. 9 M.J., Grand Jury, s 20; *Siklek v. Commonwealth*, 133 Va. 789, 112 S.E. 605.

*It has been held by the United States Supreme Court that courts have inherent power over their own process to prevent abuse, oppression, and injustice. See Krippendorf v. Hyde*, 110 U.S. 276, 4 S.Ct. 27, 28 L.Ed. 145. Subpoenas for witnesses to appear before a grand jury and testify are the court's process and not the process of the grand jury. *It is the duty of the court to see that its process is not abused. Krippendorf v. Hyde, Supra*.

(Emphasis added.) *See also* Syl. Pt. 2, in part, *State ex rel. Hamstead v. Dostert*, 173 W.Va. 133, 313 S.E.2d 409 (1984) ("[A] circuit court has supervisory powers over grand jury proceedings to preserve the integrity of the grand jury process and to insure the proper administration of justice[.]").

In sum, this Court has consistently held that 1) the right of meaningful access to our courts, under West Virginia Constitution art. III, § 17, is subject to reasonable limitations to prevent judicial abuse, and 2) a circuit court has supervisory authority over the grand jury to prevent judicial abuse. We therefore hold that a private citizen's right under West Virginia Constitution art. III, § 17 to present a complaint to the grand jury upon application to the circuit court is subject to reasonable limitations to protect our judicial

12

system from abuse. In so holding, we reject Mr. Dreyfuse's argument that the circuit court's singular duty upon receiving a private citizen's application to present a complaint to the grand jury is to grant unfettered access to the grand jury.

The precise scope of a circuit court's duty to protect the judicial system from abuse cannot be easily reduced to a formula. In describing a circuit court's twin duties to ensure that a private citizen has access to the grand jury while also imposing reasonable limitations to protect our judicial system from abuse, we find the following language from *Blair* to be illuminating:

> This Court recognizes that the proper scope of the court's responsibility is necessarily an expression of careful exercise of judicial discretion and cannot be fully described by specific formula. . . . Each case presents a wholly different set of circumstances which require careful attention so as to preserve the rights of all parties. Nevertheless, the fundamental right . . . recognized in West Virginia Constitution art. III, § 17 may not be denied without a clear showing in the record that the *pro se* litigant is engaging in a course of conduct which demonstrates a clear intention to obstruct the administration of justice.

174 W.Va. at 253, 324 S.E.2d at 396 (internal citation and quotation omitted).

Consistent with the Court's reasoning in *Blair*, as well as our ruling in *Mathena*,[8] we hold that a circuit court may not deny a private citizen's application to present

---

[8] "*If the record demonstrates a clear intention to obstruct the administration of justice*, the circuit court may impose limitations on the prisoner's right of access." Syl. Pt. 5, *Mathena*, in relevant part. (Emphasis added.)

(continued . . .)

13

a complaint to the grand jury without a showing that the private citizen's conduct demonstrates a clear intention to obstruct the administration of justice. A circuit court's order denying a private citizen's application to present a complaint to the grand jury must include such findings of fact and conclusions of law adequate for meaningful appellate review.[9] Again, we find that a single formula cannot encompass all of the possible scenarios with which a circuit court may be presented when deciding whether a particular course of conduct constitutes a clear intention to obstruct the administration of justice. We rely on our circuit courts to make this determination on a case-by-case basis, guided by our recognition that access to our court system does not permit a party to pursue a claim for "vexatious, wanton, or oppressive purposes":

> Although there is an undeniable interest in the maintenance of unrestricted access to the judicial system, unfounded claims or defenses asserted for vexatious, wanton, or oppressive purposes place an unconscionable burden upon precious judicial resources already stretched to their limits in an increasingly litigious society. In reality, to the extent that these claims or defenses increase delay or divert attention from valid claims or

---

[9] We have long adhered to the general rule that a lower court's order "must be sufficient to indicate the factual and legal basis for the [court]'s ultimate conclusion so as to facilitate a meaningful review of the issues presented." *Province v. Province*, 196 W.Va. 473, 483, 473 S.E.2d 894, 904 (1996); *see also Nestor v. Bruce Hardwood Flooring, L.P.*, 206 W.Va. 453, 456, 525 S.E.2d 334, 337 (1999) ("[O]ur task as an appellate court is to determine whether the circuit court's reasons for its order are supported by the record."). "Where the lower tribunals fail to meet this standard—i.e. making only general, conclusory or inexact findings—we must vacate the judgment and remand the case for further findings and development." *Province*, 196 W.Va. at 483, 473 S.E.2d at 904. This Court has stated, "[w]ithout factual or legal findings, this Court is greatly at sea without a chart or compass in making a determination as to whether the [lower] court's decision was right or wrong." *In re Timber M.*, 231 W.Va. 44, 59, 743 S.E.2d 352, 367 (2013) (internal citation omitted).

14

defenses asserted in good faith, they serve to deny the very access to the judicial system they would claim as justification for their immunity from sanction.

*Daily Gazette Co., Inc. v. Canady*, 175 W.Va. 249, 252, 332 S.E.2d 262, 265 (1985). *See also Hunter v. Beckley Newspapers Corp.*, 129 W. Va. 302, 306-07, 40 S.E.2d 332, 335 (1946) ("If there is one principle firmly embedded in our jurisprudence, it is that the processes of the courts must be maintained to the highest point of integrity, and free from abuse. Unless that principle is rigidly maintained, courts of justice will become the subject of suspicion, and one of the bulwarks of our governmental system will be thereby undermined.").

One factor a circuit court may consider when reviewing a private citizen's application to present a complaint to the grand jury is whether the application complies with Rule 11 of the *West Virginia Rules of Civil Procedure*. Under Rule 11(b), an attorney or an unrepresented party must certify that their submission to the court is not submitted for an improper purpose, is warranted by existing law or the establishment of new law, and that the factual contentions contained therein have evidentiary support:

> (b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief formed after an inquiry reasonable under the circumstances,
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for

15

the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

In *Hinchman v. Gillette*, 217 W.Va. 378, 391-392, 618 S.E.2d 387, 400-401 (2005) (Davis, J., concurring), the Court noted that Rule 11 permits a circuit court to preclude frivolous lawsuits:

> Rule 11 is the "gatekeeper" employed by this Court to keep out frivolous lawsuits. We have previously indicated that Rule 11 "reflects the dual concern with discouraging both frivolity and abuse . . ., and places certain burdens upon the attorney with respect to his or her gatekeeping function." *Daily Gazette Co., Inc. v. Canady*, 175 W.Va. 249, 252, 332 S.E.2d 262, 265 (1985).  Under Rule 11(a), all pleadings must be signed by an attorney or unrepresented party.  It has been noted "that a signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." Cleckley, Davis & Palmer, *Litigation Handbook* § 11(a), at 241 (2002).

Consistent with Rule 11, a circuit court may deny a private citizen's application to present a complaint to the grand jury if it determines that the complaint is being presented for an improper purpose.

## D. Specific Process

While we have addressed the scope of a circuit court's review of a private citizen's application to present a complaint to the grand jury, we now address the specific

process that should occur when a private citizen seeks to present a complaint to the grand jury. This Court has not addressed whether a private citizen should submit their proposed grand jury complaint to a prosecuting attorney before filing an application with the circuit court. We note that in this Court's seminal case on this issue, *Miller*, the private citizen submitted his complaint to the prosecuting attorney prior to seeking relief before the circuit court. 168 W.Va. at 747, 285 S.E.2d at 501. Additionally, during oral argument in this matter, counsel for Mr. Dreyfuse stated that he was not proposing that a private citizen "go around" the prosecuting attorney. Instead, counsel agreed that a private citizen should bring their proposed grand jury complaint to a prosecuting attorney first, and, if the prosecuting attorney declines to present the matter to the grand jury, then the private citizen could file their application with the circuit court.

While we have not addressed this precise issue, we find guidance in the Court's ruling in *Harman v. Frye*, 188 W.Va. 611, 425 S.E.2d 566 (1992). The Court in *Harman* addressed "the complex and troublesome issue of whether private citizens should be required to present a criminal complaint for both felony and misdemeanor cases to the prosecuting attorney or the appropriate law enforcement agency before the matter is presented to a magistrate for the issuance of a summons or complaint." *Id.* at 613, 425 S.E.2d at 568. The Court concluded that, except where there is a specific statutory exception, a private citizen's criminal complaint should be evaluated by a prosecuting attorney or law enforcement official before being submitted to a magistrate:

> Except where there is a specific statutory exception, a magistrate may not issue a warrant or summons for a

17

misdemeanor or felony solely upon the complaint of a private citizen without a prior evaluation of the citizen's complaint by the prosecuting attorney or an investigation by the appropriate law enforcement agency.

Syl. Pt. 1, in part, *Harman*.

The Court cited a litany of reasons for reaching this holding, including the protection of citizens from having to defend against "unfounded, vindictive or frivolous" charges, as well as fostering a more effective system of administering our judicial process:

> [A] rule requiring the prosecuting attorney to evaluate or the proper law enforcement agency to investigate citizens' criminal complaints before such matters are presented to the magistrate for a probable cause determination provides a more effective administration of criminal law under our justice system for several reasons. First, prosecuting attorneys institute criminal proceedings on behalf of the State of West Virginia as a whole, rather than to vindicate private rights. . . . Furthermore, by having an impartial prosecuting attorney screen criminal complaints or having law enforcement officers assist prosecuting attorneys by investigating such complaints before they are presented to a magistrate, individuals can be protected from having to defend against charges which are unfounded, vindictive or frivolous, and the prosecuting attorney's office can be spared the time and expense of prosecuting such charges. Moreover, if private citizens are no longer permitted to file criminal complaints before a magistrate, the problem of citizens racing to the courthouse to file unfounded or retaliatory charges and counter-charges against each other could be avoided. Finally, private citizens have not undergone the same professional training as prosecuting attorneys or law enforcement officers nor are they subject to the same rules of professional conduct and discipline which are imposed on prosecuting attorneys and law enforcement officers. *See generally State ex rel. Skinner v. Dostert*, 166 W.Va. at 750-52, 278 S.E.2d at 630-32. There is a presumption that prosecuting attorneys and law enforcement officers will perform their duties with integrity, and will

18

evaluate or investigate these criminal complaints fairly and skillfully.

Thus, we conclude that private citizens should submit their criminal complaints to the prosecuting attorney for evaluation or to the appropriate law enforcement agency for investigation before such complaints are presented to the magistrate for a probable cause determination. We emphasize that the evaluation of private citizen criminal complaints by a prosecuting attorney or the investigation of such complaints by a law enforcement agency before presenting such complaints to a magistrate shall in no way affect the judicial function to be performed by the magistrate in making a probable cause determination. We are adopting a rule requiring either the prosecuting attorney to evaluate private citizen complaints or the appropriate law enforcement agency to assist the prosecuting attorney by investigating such criminal complaints prior to presenting them to a magistrate to: (1) protect citizens from the issuance of warrants based on frivolous, retaliatory or unfounded complaints; (2) avoid the time and expense of having such complaints prosecuted; and (3) to foster a more effective and efficient administration of our criminal justice system.

*Id.* at 619-20, 425 S.E.2d at 574-75.

After a private citizen submits their complaint to a prosecutor or law enforcement official, the Court in *Harman* described the next step in the process: "the prosecuting attorney shall institute all necessary and proper proceedings before the magistrate, and, in suitable cases, law enforcement officers may obtain warrants and assist private citizens in obtaining the warrant or summons from the magistrate." *Id.* at 621, 425 S.E.2d 576. If the prosecutor refused to initiate proceedings, the Court noted that a private citizen retained the right to present an application to the circuit court to appear before the grand jury. *Id.*

19

Based on our ruling in *Harman* and consistent with syllabus point one of *Miller* ("[b]y application to the circuit judge . . .") we hold that when a private citizen seeks to present a complaint to the grand jury, he must first apply to the circuit court. The circuit court shall then provide a copy of the application to the prosecuting attorney. Upon receipt of the private citizen's application, the prosecuting attorney may then initiate grand jury proceedings based on the allegations in the private citizen's application or he may decline to do so. If a prosecuting attorney declines to initiate grand jury proceedings, or does not act upon the application within a reasonable period of time, the private citizen may seek review of their application in the circuit court. In reviewing the private citizen's application after a prosecuting attorney declines to initiate grand jury proceedings or does not act upon the application within a reasonable period of time, the circuit court shall conduct an *in camera* hearing to provide the private citizen and the prosecuting attorney an opportunity to address the court regarding the private citizen's application. As previously stated, a circuit court may not deny a private citizen's application to present a complaint to the grand jury without a clear showing that the private citizen is engaging in conduct which demonstrates a clear intention to obstruct the administration of justice.

### E. Instant Case

Returning to the instant case, the circuit court's denial of Mr. Dreyfuse's application did not include any findings of fact or conclusions of law. While the State argues that Mr. Dreyfuse's application was "both abusive and frivolous," the circuit court has not made such a ruling. Therefore, we find it necessary to remand this matter to the

20

circuit court for further proceedings. Upon remand, the circuit court should provide a copy of Mr. Dreyfuse's proposed complaint to the prosecuting attorney for evaluation.[10] If the prosecuting attorney declines to initiate grand jury proceedings, Mr. Dreyfuse may seek review of his application with the circuit court consistent with our ruling herein.

## IV. CONCLUSION

The circuit court's March 29, 2018, order is reversed. This matter is remanded to the circuit court for further proceedings consistent with this Opinion.

Reversed and Remanded With Directions.

---

[10] Given the nature of Mr. Dreyfuse's complaint—seeking an indictment against Cabell County's former prosecutor—we leave it to the county's current prosecutor to determine if their office should be recused from this matter.